THE BANK OF ROCHESTER *vs.* MONTEATH & KEELER.

Where an agent acts in his own name, he binds himself and not his principal.

Where the members of a copartnership agree that the business of the concern sha... be carried on by and in the name of *one of the copartners,* such name, for the *purposes of the business of the firm,* is its copartnership name, and by it the several members are bound.

So where the copartners agree that the business shall be carried on by and in the name of an individual not himself interested, *his* name is the copartnership name, and is binding upon the firm when used in its business.

Where the proprietors of a line of canal boats, by articles between themselves agreed that the business of the concern *at Rochester* should be conducted by J. A., one of the proprietors, in his own name, and that *at Albany* it should be conducted by W. M., an agent, in *his* name, but in behalf of and upon the responsibility of the defendants, who were two of the proprietors ; that no copartnership name should be used, and no paper made, accepted or endorsed in the name or on account of the copartnership ; and that each party should raise his share of the money needed by the concern upon his own responsibility, and the other parties were not to be liable therefor, but all the parties were to share equally in the profits: *Held,* that a bill of exchange drawn by J. A. in his own name to raise money for the business of the concern, upon and accepted by W. M. in *his* name, and which was discounted by the plaintiffs, bound all the proprietors as *acceptors.*

*Held further,* that all the proprietors were chargeable as *drawers;* and that no notice of non-payment was necessary, the drawers and acceptors being the same persons ; *and also* that the fact that the paper was drawn contrary to the agreement among the partners, did not affect third persons who took it without notice.

In such a case, *it seems,* that the plaintiff cannot recover on a count for money lent, without showing that the avails of the draft actually went into the copartnership business. *Per* BRONSON, Ch. J.

ASSUMPSIT, tried before DAYTON, C. Judge, at the Monroe circuit, in February, 1844. The plaintiffs sought to recover the amount of four bills of exchange, dated on different days in the months of October and November, 1842, which were drawn at Rochester by John Allen, payable to his own order, and endorsed by him; and which were drawn upon *William Monteath,* of Albany. By the first bill the drawee was requested to pay $1250, " it being to pay for towing ;" the second and third bills were for $500 each, " it being for tolls ;" and the fourth bill was also for $500, " it being to pay tolls and balances due

captains." The bills were severally accepted by the drawee, by writing his name across the face of the same; and were discounted by the plaintiffs, and the proceeds placed to the credit of Allen, the drawer.

On the 21st of February, 1840, an agreement in writing was made between the defendants, *George* Monteath and Jasper S. Keeler of the first part, John Allen of the second part, and James Savage of the third part; in which it was recited, that the parties of the first, second and third parts, each owned one-third part of the Clinton line of canal boats; that the share owned by Savage had been by him assigned to the said Monteath and Keeler as collateral security for the payment of a sum of money, and that Monteath and Keeler were to take the proceeds and income of that share until the debt should be paid. It was then agreed that each party should immediately pay up his share of the existing debts against the Clinton line, amounting to $18,000 and upwards, so that the same might commence running the then ensuing season free from debt. The business of the line at Rochester was to be conducted by Allen, he to do all things and have the general superintendence at the western part of the route. The business at the other end of the route was in like manner to be superintended on behalf of Monteath and Keeler by William Monteath of the city of Albany; the said Monteath and Keeler to be responsible for all the acts of the said William Monteath in the concern. When money should be required for the use of the line, each party was to raise his share by his own means, and on his own responsibility. Neither party was to sign, endorse, or accept any paper or borrow any money in any partnership name nor on partnership account; nor should any partnership name be held out to the public; but the business of the line at Rochester should be done in the name of said John Allen, and at Albany in the name of the said William Monteath; and no other name or indication of copartnership should be used in the business of the line; nor should the other parties to the agreement be in any manner liable for the debts contracted by either of them. It was further agreed, that all expenses of the business should be shared equally between the parties in pro-

portion to their respective interests; and all were to share equally in the net profits.

On the 30th March, 1842, George Monteath wrote a letter to J. Seymour, the president of the plaintiffs' bank, to correct certain reports which he understood had reached the ears of Seymour; in which he denied having sold out his interest in the Clinton line to his son William Monteath. And he added: " Nor is drafts accepted, or notes given by my son worthless, even though I did not consider myself holden for his acts; although I am responsible for them according to articles of agreement made with John Allen, Esq. of your city, Feb. 21, 1840."

Davis, the cashier of the bank, testified, that Allen spoke to him on the subject of discounting drafts to be drawn on William Monteath : the witness answered that it would in effect be discounting Allen's own paper, as he did not regard William Monteath as good. Afterwards the foregoing letter was shown to the witness, before he discounted any of the drafts. Witness said he discounted the drafts " upon the credit of John Allen and said letter; or the said Allen, and George Monteath and Jasper S. Keeler; or the copartnership."

The defendants objected to reading the bills in evidence; also to receiving in evidence the letter of George Monteath ; and also to the evidence on whose credit the bills were discounted; which objections were severally overruled. The defendants also moved for a nonsuit, which was denied. The judge charged the jury that the plaintiffs were entitled to recover, either on the bills, or under the money counts. Verdict for the plaintiffs, $2977,02. The defendants move for a new trial on a case.

*I. Harris,* for the defendants.

*C. P. Kirkland,* for the plaintiffs.

*By the Court,* BRONSON, Ch. J. The objection to recovering against the defendants as acceptors is, that their names do not appear upon the bills; and as a general rule, there can be no

recovery on a bill or note against one whose name does not appear upon it. When the agent acts in his own name, he binds himself, and not his principal. (*Pentz* v. *Stanton*, 10 *Wend.* 271; *Thomas* v. *Bishop*, 2 *Str.* 955; *Barlow* v. *Bishop*, 1 *East*, 432; 3 *Esp. R.* 266, *S. C.; Leadbitter* v. *Farrow*, 5 *Maule & Selw.*, 345; *Stackpole* v. *Arnold*, 11 *Mass.* 27; *Allen* v. *Coit*, 6 *Hill*, 318; *Chitty on Bills*, 32—4, *ed. of '42.*) If we do not look beyond the fact that William Monteath was the agent of the defendants, then, by accepting the bills in his own name, he bound himself, and not the defendants.

But the defendants and Allen were partners in running the Clinton line of canal boats, under an agreement that the business at Albany should be done in the name of *William Monteath*. That was the partnership name, for all the purposes of transacting the business of the firm at Albany; and the partners could bind themselves by that name as well as by any other. (*Bank of South Carolina* v. *Case*, 8 *Barn. & Cress.* 427; *Ex parte Bolitho, Buck's Cas.* 100; *Rogers* v. *Coit*, 6 *Hill*, 322; *Mason* v. *Rumsey*, 1 *Campb.* 384.) The bills were drawn on the partners by their firm name of William Monteath; and in that name the bills were accepted by the authorized agent of the firm.

If William Monteath had also been in business on his own account, then the acceptance by writing his name on the face of the bills would have been an equivocal act; and it would have been necessary to show that he accepted on account of the partnership, and not in his own private business. (*Manufacturers and M. Bank* v. *Winship*, 5 *Pick.* 11; *The U. S. Bank* v. *Binney*, 5 *Mason*, 176; *Ex parte Bolitho, Buck's Cas.* 100; *Collyer on Partn.* 226—7.) But there was no evidence that William Monteath was engaged in any other business than the affairs of this partnership. We must then regard these bills as drawn on, and accepted by, the house doing business in the name of William Monteath, which was composed of the defendants and John Allen; and as the non-joinder of Allen has not been pleaded in abatement, the defendants must answer alone.

In the view which has been taken of the case, the *plaintiffs* is

are parties to the bills as acceptors, and liable to the plaintiffs in that character. I do not see why they are not also liable both as drawers and endorsers of the bills. The name of their firm at Rochester was *John Allen,* and in that name the bills were drawn and endorsed. It does not appear that Allen was engaged in any other business, so that the bills could have been drawn on his private account. And besides, the bills appear on their face to have been drawn for "towing," "tolls," and "balances due captains," which are things connected with the partnership business. And the bills were discounted on the credit of the partnership. As the defendants drew on themselves, they had notice of the dishonor of the bills in the very act of dishonoring them; and may, therefore, be held answerable both as drawers and endorsers.

There would, perhaps, be a difficulty in the way of recovering for money lent, without showing that the avails of the drafts actually went into the partnership business. (*Allen* v. *Coit,* 6 *Hill,* 318; *Pentz* v. *Stanton,* 10 *Wend.* 271; *Denton* v. *Rodie,* 3 *Campb.* 493; *Ducarry* v. *Gill,* 4 *Carr. & Payne.* 121.) But it is enough that the defendants are liable as parties to the bills.

Although Allen may have departed from the agreement between himself and his partners in drawing the bills, that cannot affect third persons who took the paper without notice. (*Bank of South Carolina* v. *Case,* 8 *Barn. & Cress.* 427; *Whitaker* v. *Brown,* 16 *Wend.* 505, *per Chancellor Walworth.*)

The several objections made by the defendants have been sufficiently noticed in examining the leading features of the case. We think the objections were properly overruled.

New trial denied.