Judse Geaham
delivered the opinion of the Court.
Powell, Baker and Whitaker were jointly concerned and interested in the purchase of hogs m the year 1847. About the first of June, 1847, E. B. Stratton was employed by Powell, one of the firm, to purchase hogs for the firm, but was requested by Powell that he (the witness) should deal in his own name, and should not disclose the name of his principals, on'account of the effect a knowledge that they were in the market might have on prices in the county. Under this employment and arrangement, Stratton on the 7th June,' purchased hogs of the plaintiff and delivered to him a writing showing the terms of the contract which reads thus: “I have this day bought of Jos. W. Violett all the hogs he may fatten for market. I am bound to take as many as 100 head. He is bound to furnish as many as 75 head, to weigh 200 pounds and upwards, well fatted, to be delivered between the 20th November and 10th December next at 3 cents per lb. gross, payable on the 1st of March next. Given under my hand this 7th day of June, 1847.” Signed by Stratton. Sometime after this contract was thus made by Stratton in his own name, he disclosed to Violett, the fact that he had made the contract as the agent of Powell, Baker & Whittaker, and not for his own benefit. Powell and Whitaker both died before December, 1847.
In September 1848 Violett instituted this action of assumpsit against Bishop and Ransdell, administrators of the estate of Powell, deceased. The declaration contains several counts in usual form, stating a contract for the purchase of hogs by Stratton as agent for said firm. The contract, is stated substantially as it is *348 contained in the writing, but is laid as in parol, no reference being had to the writing executed by Stratton. The breach of this contract, as laid in the declaration, consists in the failure of the firm and each member thereof and of the defendants, to take from the plaintiff about ninety hogs which he had ready for delivery according to his contract.
The decision of the Circuit Court.-
The contract of the agent within the scope of his authority is binding upon the principal, or if it be subsequently recognized, although made in the name of the agent, who appeared at the time to act for himself, and although the principal was not in fact trusted at the making of the contract: {Chit, on Con., Iasi ed., p. 224, note 3: Paley on Agency, 248-9.) But if the seller knows who is the principal,but gives credit to the agent instead of the principal, the rule is different. The principal cannot deprive the other party to the contract of any equity — a set-off against the agent where he ties back and is name and credit,is not considered or known in the contract: (Palsy on Agency, 326,, 7-8.)
*348 The Court believing that the proof did not sustain the declaration, so instructed the jury, who accordingly found a verdict for the defendants. The Court having overruled the plaintiff’s motion for a new trial, he has brought the case to this Court for revision.
The reason why the Court gave the instruction to the jury does not appear in the record, but we suppose as the other facts charg ed were clearly established by the proof, the Judge believed that the execution and delivery of the written agreement, by Stratton in his own name, precluded a recovery against his principal. The counsel for defendants rely on that ground of defence in this Court.
“There can be no doubt in a parol contract that the principal is personally liable upon any contract of his agent, if made within the scope of his authoi’ity given or subsequently recognized, although the agent made the bargain in his own name-, and appeared at the time to act for himself, so that in fact the principal could not have been trusted, or his credit or his responsibility regarded or required at the time of the bargain.” (Chitty on Contracts, last edition, 224, note 3; Paley on Agency, 248-9. On the other hand, if the seller knows who the principal is, but gives credit to the agent instead of the principal, the rule is different. Thus it has been decided, that where a party dealing with an agent, takes his promissory note with a knowledge of his agency, and of the liability of the principal for the debt on which the note is given, he thereby discharges the principal. Such a contract cannot be afterwards rescinded and a new one made so as to bind the principal without his knowledge and assent. (Chitty on Contracts, 224, note 2.) The rights of a principal to sue *349 for and recover in his own name upon contracts made with the agent by others, and the liabilities of the principal incurred by acts of his agent, rest on different principles. Where a buyer has been led to contract under an impression that his contract is made with one person, the intervention of a third-person who was unknown to him at the time of the contract, cannot be permitted to deprive him of any set-off or other equitable or legal defence which he may have against the person with whom he made the contract. It would be wrong and fraudulent for the principal to keep himself concealed, permit his agent to make contracts in his own name, and then by disclosing himself reap all the advantages and profits of the contract, to the disadvantage of the other who had traded with the agent as the only person interested in the transaction. (Paley 326-7-8.)
Though there be a written contract between the agent, and another,. if the name of the principal be not disclosed, but the principal afterwards recognize the contract as made for him, assumpsit lies against the principal, and the writing may be used to show the terms of the contract.
If an agent take a bond to himself instead of his principal, the parol contract is so far merged in the written that the principal cannot maintain an action on the contract inhis own name, but it must be in the name of hb agent in the written agreement. The principal is unknown, and the person with whom the agent has contracted in his own name, has a right to regard him only as the contracting party. The action must be in the name of him in whom the legal title in such written contract is vested, although the exclusive interest or benefit to be derived from the contract or subject matter of litigation be in another. (1 Chitty, 3.) But the rule as to defendants is different. A contract made by an agent is the contract of the principal. If the agency is disclosed at the time of the contract, although it be by deed in writing, if the agent contracts as such, the principal may be sued in an action at law. (1 Chity, 37-8.) If the principal be not known at the time of the purchase made by the agent, it seems that when discovered, the principal or agent may be sued at the election of the seller. (1 Chitty, 41 — note 1.)
Suppose a man purchase (as in this case) the property of another on credit, the day of payment being fixed *350 jn a written contract beyond the day when the property is to be delivered. The nominal purchaser becomes insolvent, but the selley is afterwards informed that the contract was in fact made by his vendee as agent for another. Shall the seller in such case be compelled to part with his property — shall the principal be permitted to reap all the profits — convert the property to his own use — refuse to pay for it, and require the seller to look for redress to an insolvent? In equity and good conscience the principal ought to be compelled to perform the agent’s contract, whether that contract be by parol or in a writing having the effect of a bond. In this case there are facts proved which place the moral duty of the principals beyond doubt. They requested the agent not to disclose his agency. They afterwai'ds recognized and approved the contract. Powell, the active principal died. His administrators recognized the contract as binding on them, and they, after his death, as well Powell, before his death, in conversations on this subject, spoke of and recognized the written contract made and executed by Stratton, as having been made for his principals for their benefit and as obligatory on them. To permit them-to escape responsibility, would be manifestly unjust. Assumpsit is an equitable action. The defendants are in justice liable to the plaintiff for the injury he has sustained by their refusal to carry out the contract. It seems to this Court that the plaintiff was authorized to bring and maintain this action, and that the writing by Stratton can be used only to show the terms of the contract, the acts which each contracting party was to perform, and ought not to defeat the plaintiff in his action against the principal. If these views are correct, it follows that the Circuit Court erred in th'e instructions given to the jury, and should have granted a new trial to the plaintiff.
The judgment of the Circuit Court is therefore reversed, and the cause remanded, with directions to set *351 aside the verdict and judgment, and grant the plaintiff a new trial without payment of costs.
II. Marshall for plaintiff; Lindsey ion: defendant,