[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 53 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 54 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 55 
For the purpose of determining whether the defendant Hooker is liable upon the draft in question, and, if so, in what capacity, it will be necessary to ascertain what were the business relations existing between him and Isaacs Co.
It appears by the bill of exceptions that on the 16th of April, 1849, the defendant Hooker, as party of the first part, and the defendants Benjamin and Isaac S. Isaacs, using the name of Benjamin Isaacs Co., as parties of the second part, entered into an agreement to continue to run the transportation line upon the Erie and Oswego canals, known as the Oswego, Troy and Ohio Line; each party to have an equal interest in the profits, and to bear an equal share of the loss. The business of the line was to be done with boats owned or chartered by the parties to the agreement; the clerks and agents to be employed at Troy, Albany, New-York and Boston, for the purpose of conducting the business of the line, were to be paid for their services by *Page 56 
the parties according to their respective interests. The books of account of the business were to be kept by the party of the first part at Troy, and he was to forward a statement of the accounts to the other parties at least once in each month. And, finally, the agreement states that nothing therein contained shall be so construed as to create any associated interest or partnership between the parties thereto, excepting in the one particular business of the Oswego, Troy and Ohio Line, and that only as regards the legitimate freighting business.
This agreement, it will be seen, in express terms created a partnership, and the first question to be considered is, what was its extent, or rather, what is the meaning of the wordslegitimate freighting business?
The best exposition to be adopted is, undoubtedly, that which was given by the parties themselves. It will be observed, then, that the partnership agreement was a continuation of a previously existing arrangement, and it appears, by the account which was kept between the parties during the year 1848, that numerous entries were made of drafts accepted by the defendant Hooker, which were drawn against wheat and flour, which, as stated by one of the witnesses, were purchased by Isaacs Co., and sent to Hooker for the account of the line, and in order to freight its boats. It was also proved that the same practice continued after the partnership agreement of 1849 was entered into. Indeed, the agreement itself makes express provisions for transactions of such a character. It further appears that, according to the course of business between the parties, whenever produce was paid for in cash by Isaacs Co., at Oswego, they raised the money by procuring a discount of drafts drawn by themselves upon Hooker. This was known to and acquiesced in by him, and, with a few exceptions, the drafts were paid by him. It seems to me, then, that the conclusion is irresistible, that the purchase of the corn by Isaacs Co., for the purpose of being sent *Page 57 
by them upon the line of boats owned by the partnership, followed by actual shipment to Hooker, constituted a part of the legitimate freighting business, and that all the parties so understood it, and became liable upon such purchase, and also for all moneys advanced for the purpose of enabling them to make it. But if there were any doubt as to the capacity in which Isaacs 
Co. acted in making the purchase in question, I think that it is removed by the particular circumstances of the case. It appears from the bill of exceptions that shortly before the purchase was made the defendant Hooker sent a person in his employ to Oswego with a letter addressed to Isaacs Co. The letter states that the bearer of it will talk to Isaacs Co. in relation to business; that he will inquire about corn, and will advise with them. It also appears that, after the receipt of this letter, the bearer of it went with Isaacs Co. to look at different lots of corn, and was informed by them that they were going to buy the corn in question, and was afterwards informed by them that they had purchased it, and he neither said nor did anything expressive of his disapprobation of their acts. It further appears that Hooker was telegraphed as to the price of the corn before it was purchased, and that no answer was received from him; and, finally, it appears that the corn was shipped to Hooker to be disposed of on account of the line, and that it was received and disposed of by him. Under these circumstances it seems to me that we must come to the conclusion that the corn was purchased for the benefit of the partnership, and that all the members of the partnership are liable for the money which was advanced to Isaacs Co. to enable them to make the purchase.
The next question is as to the capacity in which they are liable, or rather, as the other two defendants have made default, as to the capacity in which the defendant Hooker is liable. The justice by whom the action was tried held that he was liable as one of the drawers of the bill. The court *Page 58 
at general term held that he was liable for money lent. In my judgment there is sufficient in the case to establish his liability in either capacity. It will be observed that the parties had not, by their articles of agreement, adopted any partnership or firm name. But it appears that the partnership business at Oswego was done in the name of Isaacs Co., with the acquiescence and approbation of all the members of the firm, and the name of Isaacs Co. was, as to such business, the partnership name. It must follow, therefore, that as the money in the case before us was advanced upon the discount of a draft drawn in the name of Isaacs Co., and was used by the firm in its partnership business, all the members of the firm, including the defendant Hooker, became liable as drawers. It is no objection that his name does not appear as drawer, for, as the partnership name was used in the partnership business, all the partners were embraced in it. This is the principle which was established in the somewhat analogous case of The Bank ofRochester v. Monteath (1 Denio, 402).
The learned justice who delivered the opinion of the court at the general term seems to have thought that, in the case above cited, the defendant should have been held liable for money lent, and not as party to the bill in suit, and he refers to the cases of Allen v. Coit (6 Hill, 318), and Rogers v. Coit
(ib., 323). Whether the court, in forming their opinion in the case of The Bank of Rochester v. Monteath, thought that the facts differed from those in the two cases last cited, or whether they intended to overrule these cases, does not appear; but, if the facts are to be regarded as the same in all the cases, I should unhesitatingly adopt the rule laid down in the case ofThe Bank of Rochester v. Monteath as the correct one.
It is contended, however, that there is not sufficient stated in the complaint to authorize the court to hold the defendant Hooker liable as one of the drawers of the bill. The Code of Procedure requires that the complaint shall *Page 59 
contain a statement of the facts constituting the cause of action. In this case it is stated that all the defendants were purchasers; that Isaacs Co. conducted the business of the partnership at Oswego in their names; that as parties they bought a large quantity of corn for the benefit of the firm, and drew a draft upon Hooker, in the name of Isaacs Co., for the firm, which the plaintiff discounted, and that Hooker received the corn purchased by means of the discount, and that it was sold and disposed of by him. I think that these allegations are sufficient to sustain the judgment of the court that Hooker became liable as one of the drawers of the bill in suit. It is true that it would appear that the person who drew the complaint contemplated that Hooker would be held liable in some other capacity. But that is immaterial. The very object of the new system of pleading was to enable the court to give judgment according to the facts stated and proved, without reference to the form used or to the legal conclusions adopted by the pleader.
The judgment should be affirmed.