## CHANDLER v. COE & A.

### *Contract—Disclosed and undisclosed principals—Agent.*

Where a principal carries on business in the name of his agent as a business name, the principal is liable upon a contract made by his agent for him in the agent's name, whether it is verbal or written; and if written, whether it is negotiable or not, and whether the agent disclosed his agency or not.

An undisclosed principal is liable to be sued and entitled to sue upon an express verbal contract, and also upon a simple written contract not under seal, but not upon a negotiable instrument, made by his agent for him in the agent's name.

A disclosed principal is not liable to be sued nor entitled to sue upon a written contract made by his agent for him in the agent's name.

A principal is not liable to be sued nor entitled to sue upon an implied contract arising from the passage of the consideration between his agent and the other contracting party where there was an express contract in the agent's name, whether verbal or written, unless an action might be sustained by or against him upon the express contract.

Where an agent is sued upon a written instrument executed in his own name, whether it is negotiable or not, and whether he disclosed his agency or not, parol evidence that he contracted only as agent is not admissible for the purpose of discharging him from liability.

ASSUMPSIT, by Horace J. Chandler against E. S. Coe & S. R. Bearce, brought to recover a balance claimed to be due from the defendants for cutting and drawing logs in the winter of 1865 and 1866, and for delivering the same in the Androscoggin river in the spring of 1866. Plea, the general issue. The writ is dated October 8, 1870.

It appeared that some time in October, 1865, the plaintiff and one L. E. Dunn had a conversation in regard to cutting and hauling the logs; that the plaintiff explored the land from which they were to be cut, and, during the latter part of November, 1865, made a verbal bargain with said Dunn to cut and haul and deliver as aforesaid what logs the plaintiff might be able to do with four horses and four oxen, properly manned and equipped, at four dollars per thousand feet; that immediately after this verbal contract was made, the plaintiff commenced the work and continued until the fore part of April, 1866; that Dunn made advances to the plaintiff to the amount of $550 before December 28, 1865, at which time he reduced the contract to writing, describing himself therein as the party with whom the plaintiff contracted, and not mentioning the names of the defendants, and the plaintiff and Dunn signed it. The plaintiff was a witness, and was permitted, against the defendants' objection, to testify that Dunn at the time of making the contract said he was acting for the defendants in making it; and on cross-examination he testified that it was his understanding that Dunn was acting for the defendants in making the contract. Dunn testified that he did not represent to the plaintiff, at the time the contract was made or at any other time, that he was acting in the capacity of agent for the defendants, or as agent for anybody, but that he was acting for himself alone.

The plaintiff claimed that the defendants were the principals in said contract; that the contract was made in the name of Dunn for them, and that he was their agent in doing the business; and that they had allowed and permitted him, as their agent, to contract and act for them, for a long time, in his own name, in making contracts for cutting and hauling timber; and the plaintiff introduced evidence tending to prove that such had been their way of doing business. The defendants objected, and contended that after the written contract had been read in evidence (as it was for the plaintiff), parol testimony should not be admitted to prove that the defendants were the real parties in interest. But the court overruled the objection and admitted the evidence, and the defendants excepted. The defendants' counsel argued to the jury, that, if the plaintiff was to be believed, the defendants were not undiscovered principals, but that at the time of making the contract he was informed by Dunn that he was acting as agent in the matter, and that his principals were the defendants; and thereupon, before the plaintiff's counsel commenced his argument to the jury, moved for a nonsuit on that ground. The court declined to order a nonsuit, and the defendants excepted. But the court at that time informed the counsel that the law would be held to be, that if at the time of executing the written contract the plaintiff knew and was

informed by Dunn that he was acting as agent in the matter, and that the defendants were his principals, he could not recover in this suit, and read to the counsel, in the hearing of the jury, the following minute, which had been previously prepared as an instruction to be given to the jury: "I think if the plaintiff knew at the time of making the contract that Dunn was acting as agent in the affair and not on his own behalf, and also knew for whom he was acting, and then entered into this contract in writing, which on its face is a contract with Dunn as an individual, his only remedy is against Dunn, and these defendants cannot be held liable." The court then proposed to submit to the jury the three following questions, which had also been previously prepared in writing: "(1) Was Dunn acting as the agent of the defendants in making the contract? (2) Did the plaintiff at the time of making the contract know that Dunn was acting as the agent of the defendants in making it, and did Dunn so inform him? (3) Has the plaintiff been paid for the timber he got out under the contract? If not, how much is due him, including interest?"

The plaintiff's counsel said he did claim that Dunn informed the plaintiff that he was acting as the agent of the defendants in making the contract, and that the plaintiff understood from Dunn that he was entering into a contract with the defendants through Dunn as their agent. The second question was thereupon struck out, and the court informed the counsel that the first and third questions would be submitted to the jury, in order that the results of the trial might not be lost in case the view of the law suggested by the court as to the second question should be held to be erroneous. The plaintiff's counsel argued to the jury that the fact that at the time the contract was made Dunn said he was the agent of the defendants was a strong circumstance to prove that issue in favor of the plaintiff.

The jury answered the first question in the affirmative and the third in the negative, and assessed the plaintiff's damages at $1,694.26. Upon considering the foregoing exceptions and the questions arising on the motion for a nonsuit, this court is to make such order as to judgment as may be proper.

*G. A. Bingham* and *Ray & Drew*, for the plaintiff, cited Luke x 7, *Crocker* v. *Colwell*, 46 N. Y. 212, Parsons on Partnership *125, note h, and *128–*130, and notes and authorities therein cited, *Phelps* v. *Livingston*, 2 Root (Conn.) 496, 2 Sm. Lead. Cas. [*226], note to *Thomson* v. *Davenport*, *Ripley* v. *Colby*, 23 N. H. 442, 443, *Melledge* v. *Boston Iron Co.*, 5 Cush. 158, *Lerned* v. *Johns*, 9 Allen 419, Story on Agency, secs. 160, 160a, 161 and notes, *Dykers* v. *Townsend*, 24 N. Y. 57, *Lindus* v. *Bradwell*, 57 E. C. L. 583, *Muldon* v. *Whitlock*, 1 Cow. 290, *Eastern Railroad* v. *Benedict*, 5 Gray 561, *Fuller* v. *Hooper*, 3 Gray 341, *Beebe* v. *Robert*, 12 Wend. 413, *Higgins* v. *Senior*, 8 M. & W. 834, 1 Chit. Pl. *39, *Thomson* v. *Davenport*, 9 B. & C. 78.

*Fletcher & Heywood* and *Burns & Heywood*, for the defendants, cited *Paterson* v. *Gandasequi*, 15 East 62, *Addison* v. *Gandasequi*, 4 Taunt.

573, *Thomson* v. *Davenport*, 9 B. & C. 78, *Beckham* v. *Drake*, 9 M. & W. 79, *Fisk* v. *Eldredge*, 12 Gray 474, *Haverhill M. F. Ins. Co.* v. *Newhall*, 1 Allen 130, *Savage* v. *Rix*, 9 N. H. 263, 1 Am. Lead. Cas., 4th ed., 627, note following *Taintor* v. *Prendergast*, Story on Agency, secs. 288–291, *Abbot* v. *First Universalist Society*, 28 N. H. 22, *Brown* v. *Rundlett*, 15 N. H. 360, 2 Sm. Lead. Cas., 6th Am. ed., 430, *Page* v. *Stone*, 10 Met. 160, *Bate* v. *Burr*, 4 Harrington 130, *Coxe* v. *Devine*, 5 Harrington 375, *Ahrens* v. *Cobb*, 9 Humph. 643, *Ranken* v. *Deforest*, 18 Barb. 143, *Ins. Co.* v. *Smith*, 3 Whart. 520, 528, *Meeker* v. *Claughton*, 44 N. Y. 349, *Williams* v. *Robbins*, 16 Gray 77, *Kingsley* v. *Davis*, 104 Mass. 178, *Lerned* v. *Wannemacker*, 9 Allen 412.

HIBBARD, J. The plaintiff claims to be entitled to recover against the defendants, for labor performed by him under a contract entered into with L. E. Dunn, and reduced to writing and signed by Dunn in his own name, upon the ground that the real contracting party was the defendants carrying on business in the name of L. E. Dunn, who acted as their agent in making the contract, and so informed the plaintiff at the time of making it. The plaintiff's position is not merely that Dunn was the agent of the defendants, duly authorized to make the written contract in their behalf, which the plaintiff understood at the time it was made, but that it was the contract of the defendants carrying on business in the name of L. E. Dunn.

In *S. C. Bank* v. *Case*, decided in 1828, 8 B. & C. 427 (15 E. C. L. 256), three partners were held liable upon bills indorsed by J. B. Clough, one of the partners, in his own name, in which he transacted a portion of the partnership business.

In *M. & M. Bank* v. *Winship*, decided in 1827, 5 Pick. 11, and in *U. S. Bank* v. *Binney*, decided in 1828, 5 Mason 176, which were actions against three defendants as partners upon promissory notes signed or indorsed by John Winship, one of the partners, in his own name, the same rule of law was fully recognized, although the burden of proof was held to be on the plaintiff to show that the notes were given for the use of the partnership; but in *Etheridge* v. *Binney*, decided in 1830, 9 Pick. 272, which was an action against the same defendants upon three memorandum checks signed by Winship in his own name, the proof being that Winship represented to the plaintiff, at the time of borrowing the money for which the checks were given, that it was for the use of the partnership, the plaintiff was held entitled to recover, without proof that the money was actually used in the partnership business. *Oliphant* v. *Mathews*, decided in 1853, 16 Barb. 608, is to the same effect.

When the bank account of a firm is kept in the name of one of its members, and all checks are drawn in his name, the firm is liable upon a check thus drawn in its business. *Crocker* v. *Colwell*, decided in 1871, 46 N. Y. 212.

But it is not in cases of dormant partnership alone that a party carrying on business in a name other than his own has been held liable on a contract executed in his business name.

In *Phelps* v. *Livingston*, decided in 1797, 2 Root (Conn.) 495, it was held that an action would lie against the defendants upon a note signed by and in the name of John Irwin, the superintendent of their manufactory, upon the ground that " the defendants might bind themselves by the name of John Irwin, and they might authorize him to bind them in the same manner and by that signature."

In *Truman* v. *Loder*, decided in 1840, 11 Ad. & E. 589 (39 E. C. L. 178), one Higginbotham carried on business for the defendant in his own name, and the defendant was held liable for not performing a written contract for the sale of a quantity of tallow entered into by and in the name of Higginbotham. Lord DENMAN, in delivering the opinion of the court, used this language : " If, then, the defendant chose to appoint an agent to carry on trade for him in the name of Higginbotham, he clearly authorized that person to do all that could be necessary for him so to carry it on ; among other things, to employ a broker to sell for him ; and it does not lie in his mouth to deny that the name of Higginbotham, so inserted by the broker in the sold note, is the defend-ant's own name of business.   *   *   Among the ingenious arguments pressed by the defendant's counsel is one which it may be fit to notice ; the supposition that parol evidence was introduced to vary the contract, showing it not to have been made by Higginbotham, whose name is inserted in it, but by the defendant who gave him the authority. Parol evidence is always necessary to show that the party sued is the person making the contract and bound by it, whether he does so in his own name or in that of another, or in a feigned name, and whether the contract be signed by his own hand or by that of an agent, are inquiries not different in their nature from the question who is the person who has just ordered goods in a shop."

Where an agent acts in his own name, he binds himself and not his principal ; but where the copartners agree that the business shall be carried on by and in the name of an individual not himself interested, his name is the copartnership name, and is binding upon the firm when used in its business.   *Bank of Rochester* v. *Monteath*, decided in 1845, 1 Den. 402.

In *Melledge* v. *Boston Iron Co.*, decided in 1849, 5 Cush. 158, 174, an action was sustained upon notes signed in the name of Horace Gray & Co., the general agents of the defendant corporation, that being " a name adopted and sanctioned by them as indicative of their contracts ; " and in *Fuller* v. *Hooper*, decided in 1855, 3 Gray 334, 341, two drafts drawn in the name of the Pompton Iron Works, in which Horace Gray transacted a portion of his business, were allowed to be proved against his estate.

" There is certainly an inconvenience in an individual carrying on business by a name or description other than his own, but we are not prepared to say that it is illegal ; and the inconvenience to the party himself is in general sufficient to prevent it.   But there are instances where, for the sake of notoriety or preserving the good-will of a trade, names are kept up after the original parties have all disappeared, and

the names of the parties really interested have all changed." SHAW, C. J., in *Bryant* v. *Eastman*, decided in 1851, 7 Cush. 114.

"The cases in which that doctrine has been applied have been usually cases of corporations or copartnerships transacting their business under an artificial name by which they were known and recognized in their dealings. If this name is also that of a natural person, competent to contract and making contracts on his own account, it requires very clear and cogent proof, where an instrument is executed by him in his own name, to show that it was not designed to be his contract." HOAR, J., in *Williams* v. *Robbins*, decided in 1860, 16 Gray 82.

*Pease* v. *Pease*, decided in 1868, 35 Conn. 131, 148, was an action upon a negotiable instrument, executed by Zelotes Terry in his own name but as agent for the defendants, in which the court held that, although if the case stood on the principles of agency alone the plaintiff could not recover, evidence that Zelotes Terry was the business name of the defendants was competent. "The weight of the testimony," said LOOMIS, J., in delivering the opinion of the court, "would doubtless be impaired by the fact that the business name, if any, here employed was not a purely artificial one, as is usual in such cases, but the name of a natural person who in the eye of the law was competent to contract on his own account. But in principle there is no difference between assuming a purely artificial name by which to transact business, and assuming the proper name of some other natural person, only this, that in the latter case the proof ought to be very clear to show that the contract was not designed to be the personal contract of such natural person."

It is very clear that if the defendants carried on business in the name of L. E. Dunn, and Dunn executed this contract in his own name as their agent, it is binding upon them whether he did or did not inform the plaintiff of his agency. The law is the same even in the case of negotiable instruments, which under some circumstances stand on a different ground from simple written contracts, as will hereinafter appear.

But is it indispensable for the plaintiff to prove that the defendants adopted the name of L. E. Dunn as their business name? May he not recover if Dunn acted as their duly authorized agent in making the contract, although he may not have done other business for them in his own name? If the contract had been verbal, the case would have been free from difficulty. In that event, if the principals had been known at the time it was made, the presumption would have been that it was their contract, but if the agent had contracted on his own account, and the plaintiff had elected to look to him rather than to the principals, he would have been bound by his election. If they had been unknown, he would have been entitled to make his election whether to look to the agent or to the principals, within a reasonable time after discovering them.

In an elaborate note to *Rathbon* v. *Budlong*, 1 Am. Lead. Cas., 5th ed., 764, [\*634], it is confidently stated that, previously to the case of

*Beckham* v. *Drake*, decided in 1841, 9 M. & W. 79, "but little hesitation would have been felt in saying that the doctrine of the liability of an undisclosed principal, on contracts made by his agent, was applicable only to implied contracts, except in the case of a partnership;" and that "no case had ever established such a liability in cases of express contracts where merely the relation of principal and agent existed."

Now, as most of the cases in which the liability of an undisclosed principal has been considered have been actions in which the plaintiff declared upon the common counts and not specially, it is probably true that most of the cases in which his liability has been established have been actions of that character; but if those cases have been brought in the same manner as they would have been had they been brought against the agent who executed the contract, the method of declaring can have no tendency to show that any distinction between the liability of an undisclosed principal upon express and upon implied contracts has been recognized. Upon examination it will appear that such is the fact. As in most of the cases the express contract, if there was one, had been fully performed on the part of the plaintiff, the suit was upon the common counts, as is customary and allowable in cases in which no question of agency arises. 1 Chit. Pl., 13th Am. ed., [348]; *Cummings* v. *Nichols*, 13 N. H. 420, 427; *Hale* v. *Handy*, 26 N. H. 206, 210.

The author of the note from which we have quoted has cited no case which turned on such a distinction between *express* and implied contracts. Whether any such case can be found or not, we do not know. There are, however, cases in which it is held that an undisclosed principal is not liable to be sued or not entitled to sue upon a *written* contract made by his agent in his own name, but that an action may be maintained upon what the author of the note would term an implied contract arising from the passage of the consideration. Such a doctrine is held or referred to with approbation in *U. S.* v. *Parmele*, decided in 1810, 1 Paine 252, 254; *Ducarry* v. *Gill*, decided in 1830, 4 C. & P. 121 (19 E. C. L. 302); *Pentz* v. *Stanton*, decided in 1833, 10 Wend. 271, 276; *Allen* v. *Coit*, decided in 1844, 6 Hill 318, 321; *Bank of Rochester* v. *Monteath*, decided in 1845, 1 Den. 402, 406; *Huntington* v. *Knox*, decided in 1851, 7 Cush. 371, 375; *Fenly* v. *Stewart*, decided in 1851, 5 Sandf. 101, 112; *Bank of British N. A.* v. *Hooper*, decided in 1856, 5 Gray 567, 571; and *Gillig* v. *Lake Bigler Road Co.*, decided in 1866, 2 Nev. 214, 219, only three of which, it will be observed, were decided before *Beckham* v. *Drake*.

But it surely is not true that the liability of an undisclosed principal to an action upon an express contract was unknown until the time of *Beckham* v. *Drake*. In *Paterson* v. *Gandasequi*, decided in 1812, 15 East 62, 68, which is the leading case as to the liability of undisclosed principals, Lord ELLENBOROUGH expressly declared that "the law has been settled by a variety of cases, that an unknown principal, when discovered, is liable to be sued on the contracts which his agent makes for him." *Cothay* v. *Fennell*, decided in 1830, 10 B. & C. 671 (21 E.

C. L. 146), was an action in favor of unknown principals, and it certainly stood no better than if it had been against unknown principals. "*Per curiam.* If an agent makes a contract in his own name, the principal may sue and be sued upon it; for it is a general rule, that whenever an express contract is made, an action is maintainable upon it either in the name of the person with whom it was actually made, or in the name of the person with whom in point of law it was made." And the remark of DENMAN, C. J., in *Sims* v. *Bond*, decided in 1833, 5 B. & Ad. 389 (27 E. C. L. 99), that " it is a well-established rule of law that where a contract not under seal is made with an agent in his own name for an undisclosed principal, either the agent or the principal may sue upon it," has been constantly quoted with approbation in judicial decisions ever since it was made.

Numerous similar decisions have been made since the case of *Beckham* v. *Drake* was decided. In *N. J. Steam Navigation Co.* v. *Merchants Bank*, decided in 1847, 6 How. 377, the original plaintiff was held entitled to recover for a large amount of specie lost on board the Lexington, upon a contract, to carry the specie safely, made by the original defendant with an expressman to whom the plaintiff had intrusted it. It is to be inferred, although it is not distinctly stated, that the principal was not disclosed in that case, and that the contract was not in writing. The general doctrine, that an unknown principal may sue upon an express contract made by his agent in the name of the agent, is distinctly recognized by GILCHRIST, C. J., in *Elkins* v. *B. & M. Railroad*, decided in 1849, 19 N. H. 337, 342. Other and conclusive authorities, in support of the position that an unknown principal is liable to be sued and entitled to sue upon an express contract made by his agent for him in the agent's name, may be found in that portion of this opinion in which his liability, where the express contract is in writing, is considered.

But the positive manner in which this doctrine has been attacked calls for an examination of the objections which have been urged against it. " In what form," the note referred to continues, " is the declaration to be framed ? It certainly cannot be averred that A (the principal) by the name and style of B (the agent) made the contract, for the facts would not sustain the declaration ; and such a view would be inconsistent with the acknowledged personal liability of the agent." There may be some inconsistency in this, but we do not know that there is more than in permitting a plaintiff to declare upon the common counts against the agent or the principal at his election, and recover in either case for the same cause of action. We see no serious objection, in an action upon an express contract, against declaring that the agent promised, or that the principal promised without mentioning the name of the agent ; nor, where the contract is in writing in the name of the agent, against declaring that he made it, or that the principal made it by the name of the agent. This simply gives to the plaintiff a right to elect within a reasonable time between two. He cannot maintain his action against both, nor, having elected with a knowledge of

the facts to look to the agent, can he afterwards turn round and hold the principal. Whether the rules of evidence present any obstacle to the maintenance of any action by or against the principal, where the contract is in writing and does not mention his name, will be considered in another part of this opinion.

"No doubt," the note continues, "a principal may be declared against on a parol contract, and if there be evidence to satisfy the jury of an actual contract between the parties to the action, a written or verbal engagement made by the agent may be given in evidence to show the terms of that contract." Precisely what is meant by "an actual contract between the parties" we are unable to say, but from the context it may be supposed that reference is made to an implied contract. Now, it would seem that an express contract entered into by an agent must be either binding or not binding on his principal; that because the principal has had the benefit of goods or labor contracted for by his agent, he is liable upon an implied contract to pay, not what they were reasonably worth, but the price agreed upon by the agent, appears to present a novel idea.

"However just this view may be theoretically, it is open to the objection of dividing a transaction which is really a whole into parts, and interfering with the mutuality of remedy which is essential to justice. For if it be held that the binding force of the agreement, viewed as such, is limited to the agent, the purchaser can have no remedy against the principal for a refusal to forward the goods, although liable to him for the price if they are sent. Nor can he make the principal answerable in damages for a breach of warranty, or of any other collateral stipulation, and must be satisfied with such redress as he can get by way of set-off or recoupment, or through a suit against the agent." American note to *Thomson* v. *Davenport*, 2 Sm. Lead. Cas., 7th Am. ed., 380, [\*375].

If an undisclosed principal, after the contract made by his agent for him has been performed by the opposite party, is liable for the price agreed upon by his agent, why ought he not to be liable in damages for non-performance of the contract? We are unable to perceive why he should be liable for the contract price when the other party has been permitted to perform, and not liable at all when the other party was ready to perform but was not permitted to do so.

If an undisclosed principal may be sued upon an express contract made by his agent, he may, on the other hand, sue in his own name upon it. It might seem that a principal, who was undisclosed only because his own agent concealed or neglected to mention his name, could not complain if not permitted to sue in his own name, but "a due regard for the mutuality which is essential to justice requires that when an undisclosed principal is liable to be sued he should be entitled to enforce the contract by suit." American note to *Thomson* v. *Davenport*, 2 Sm. Lead. Cas., 7th Am. ed., 377. This may be better illustrated if we suppose the parties to be reversed. If an undisclosed principal is liable upon an implied contract for the price which his

agent agreed to pay for goods sold and delivered to the agent, the principal must be entitled to recover in his own name upon an implied contract the price which the other contracting party agreed to pay for goods sold and delivered to him by the agent, which may be much more than the actual value of the goods; yet, unless he is liable upon the express contract, it seems that the other party can maintain no action against him if there is a failure of warranty or a refusal to deliver the goods; and this we think must be so, even though they have been paid for to the agent in advance, unless it appears that the consideration has actually come to the use of the principal.

A doctrine which leads to such results requires stronger reasons to support it than we have been able to discover in favor of sustaining an action by or against a principal upon an implied contract, where his agent has made an express contract for him, unless an action might be maintained by or against him upon the express contract; and we, upon the whole, are of the opinion that the law is otherwise, and that the plaintiff in the present action of general assumpsit cannot recover unless he might recover against the defendants upon the express contract made by their agent. If Dunn had settled with the plaintiff and given his own negotiable note for the amount due, whether the plaintiff, though not entitled to maintain any action against the defendants upon the note for reasons hereinafter stated, might upon surrendering it recover the amount of it under a count for work and labor, is a different question. But it is settled beyond all doubt or difficulty, by the authorities already cited and those which remain to be cited in this opinion, that an undisclosed principal is liable to be sued and entitled to sue upon the express contracts (if they are verbal) of his authorized agent, subject, however, to the condition that no injustice shall be done to the principal by reason of the state of the accounts between him and his agent, nor to the other contracting party by reason of any payment made to the agent or set off against him.

But the contract between these parties was reduced to writing, and it does not contain the names of the defendants; and this presents a perplexing question, which has given rise to a great variety of contradictory and irreconcilable decisions. The importance of the question has induced us to make an extended examination of the authorities, and we have attempted, with what success will presently be seen, to discover a satisfactory solution of the difficulties by which it is surrounded.

In *Stackpole* v. *Arnold*, decided in 1814, 11 Mass. 27, and in *Savage* v. *Rix*, decided in 1838, 9 N. H. 263, each of which was an action upon a written instrument executed in the name of an agent, the former being against the principal and the latter against the agent, it was held that where one makes a written contract as the agent of another, intending to bind his principal, it must appear in the contract itself that he acts as such agent in order to support an action against the principal. Elaborate opinions to the same effect may be found in *Fenly* v. *Stewart*, decided in 1851, 5 Sandf. 101, and *Gillig* v. *Lake Bigler Road Co.*, decided in 1866, 2 Nev. 214. On the other hand, in

*U. S.* v. *Parmele,* decided in 1810, 1 Paine 252, and in *Newcomb* v. *Clark,* decided in 1845, 1 Den. 226, in which the respective plaintiffs were the principals, it was held that no action will lie in the name of a principal upon a written contract made by his agent in the agent's name.

In Massachusetts it has been repeatedly held, as it has in other states and in England, that in the case of negotiable paper parol testimony is inadmissible either to discharge the agent or to charge the principal, upon the ground that, in the language of Lord ABINGER in *Beckham* v. *Drake,* before cited, " by the law merchant, a chose in action is passed by indorsement, and each party who receives the bill is making a contract with the parties upon the face of it, and with no other party whatever "—*Bank of British N. A.* v. *Hooper,* decided in 1856, 5 Gray 567, 570, *Williams* v. *Robbins,* decided in 1860, 16 Gray 77, 79, *Slawson* v. *Loring,* decided in 1862, 5 Allen 340, 342, GRAY, J., in *Bartlett* v. *Tucker,* decided in 1870, 104 Mass. 339; but that (contrary to the doctrine of *Stackpole* v. *Arnold)* the principal (perhaps whether disclosed or undisclosed) may sue or be sued upon a simple written contract executed in the name of his agent. *Huntington* v. *Knox,* decided in 1851, 7 Cush. 371; *Williams* v. *Bacon,* decided in 1854, 2 Gray 387; METCALF, J., in *Fuller* v. *Hooper,* decided in 1855, 3 Gray 341; BIGELOW, C. J., in *Brown* v. *Parker,* decided in 1863, 7 Allen 339; *Lerned* v. *Johns,* decided in 1864, 9 Allen 419; GRAY, J., in *Gowen* v. *Klous,* decided in 1869, 101 Mass. 454.

In *Salmon Falls Manf. Co.* v. *Goddard,* decided in 1852, 14 How. 452, which was an action to recover for goods sold but which were destroyed by fire before they came to the use of the defendant, a memorandum made and signed in the name of the plaintiff's agent was held sufficient under the statute of frauds, and the action was sustained.

In *Ring* v. *Norton,* decided in 1854, 4 Cal. 355, HEYDENFELDT, J., in delivering the opinion of the court, said,—" The contract was in writing, made and signed by their [the plaintiffs'] agents without disclosing the principal. Although the cases cited are conflicting, the best authority and the soundest reasoning, I think, is in favor of the position that in such cases the principal may bring the action."

In *Ford* v. *Williams,* decided in 1858, 21 How. 287, which was an action upon a written contract made by John W. Bell in his own name as agent for the plaintiff without disclosing his name, the plaintiff was allowed to recover damages for its non-performance. GRIER, J., in delivering the opinion of the court, thus laid down the rule: " If a party is informed that the person with whom he is dealing is merely the agent for another, and prefers to deal with the agent personally on his own credit, he will not be allowed afterwards to charge the principal; but when he deals with the agent without any disclosure of the fact of his agency, he may elect to treat the after discovered principal as the person with whom he contracted. The contract of the agent is the contract of the principal, and he may sue or be sued thereon though not named therein; and, notwithstanding the rule of law that

an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract was acting for him. This proof does not contradict the writing, it only explains the transaction."

In *Cushing* v. *Rice*, decided in 1858, 46 Me. 303, Bragg & Moor, as agents for the plaintiffs, made a written contract in their own names with the defendants to buy a quantity of lumber, and at the same time made a bill of the lumber from themselves to the plaintiffs, taking their acceptances therefor and indorsing them to the defendants in payment of the price. An action for money had and received to recover back a part of the money, on the ground that the lumber proved inferior in quality and fell short in quantity, was sustained.

In *Youghiogheny Iron and Coal Company* v. *Smith*, decided in 1870, 66 Pa. St. 340, 343, in which the defendant was an undisclosed principal, SHARSWOOD, J., in delivering the opinion of the court, stated the law thus: "It may certainly be now regarded as a point settled beyond all possible controversy, that if an agent, duly authorized, makes a contract in his own name, without disclosing his principal, and even when such principal is entirely unknown to the other contracting party, he is nevertheless bound, and damages may be recovered of him in an action for its breach."

The doctrine, that an undisclosed principal may sue and be sued on written contracts not under seal, made by his agent in his own name, is also fully recognized in *Bank of U. S.* v. *Lyman*, decided in 1848, 20 Vt. 666, 673, *Violett* v. *Powell's Adm'r*, decided in 1850, 10 B. Mon. 347, *Brooks* v. *Minturn*, decided in 1851, 1 Cal. 481, *McTyer* v. *State*, decided in 1855, 26 Ala. 487, *Nash* v. *Towne*, decided in 1866, 5 Wall. 689, 703, *Butler* v. *Kaulback*, decided in 1871, 8 Kans. 668, and in *Coleman* v. *First N. B. of Elmira*, decided in 1873, 53 N. Y. 388, 393. It is to be observed that in some of the foregoing cases no distinction is made between known and unknown principals.

That parol evidence is admissible for the purpose of bringing in an unknown principal in such a case is well settled in England. "This evidence," said Baron PARKE, in *Higgins* v. *Senior*, decided in 1841, 8 M. & W. 834, 845, " in no way contradicts the written agreement. It does not deny that it is binding on those whom on the face of it it purports to bind, but shows that it also binds another, by reason that the act of the agent, in signing the agreement in pursuance of his authority, is in law the act of the principal."

In *Beckham* v. *Drake*, decided in 1841, 9 M. & W. 79, which was assumpsit upon a written contract executed by Knight and Surgey in their own names, Drake was held liable as a dormant partner. The case, however, did not turn on any question of partnership, but was placed squarely on the principles of agency, Lord ABINGER and Baron PARKE recognizing without qualification the liability of an undisclosed principal to an action upon a written contract, made by and in the name of his agent. " Suppose," said Lord ABINGER, " Knight and Surgey had made a contract verbally, not having said a word about

Drake: no question could then have arisen that Drake might, nevertheless, be made liable upon it. How, then, does the fact of its being in writing alter the case ? "

In *Calder* v. *Dobell,* decided in 1871, L. R., 6 C. P. 486, the plaintiffs were cotton brokers. The defendant authorized one Cherry to buy one hundred bales of cotton for him, but declined to allow his name to appear in the transaction. The plaintiffs refused to sell on the credit of Cherry. Being pressed, he disclosed the defendant as his principal. Bought and sold notes were made in the name of the plaintiffs and Cherry. Cherry was debited on the plaintiffs' books. Cherry refused to accept and pay for the cotton. The jury found specially that the defendant authorized Cherry to make the contract for him; that the defendant, knowing of it, ratified it; and that the plaintiffs did not elect to contract with Cherry as principal upon the terms of giving credit to him alone. The defendant's counsel argued that the principal being known, this was admitting parol evidence to contradict the written contract; but the court held otherwise, and refused to disturb the plaintiffs' verdict. Against this judgment an appeal was brought in the exchequer chamber, where the judgment was affirmed. L. R., 6 C. P. 498.

It is laid down in Story on Agency, sec. 160*a*, that "the doctrine maintained in the more recent authorities" is, that "if the agent possesses due authority to make a written contract not under seal, and he makes it in his own name, whether he describes himself to be an agent or not, or whether the principal be known or unknown, he, the agent, will be liable to be sued and be entitled to sue thereon, and his principal also will be liable to be sued, and be entitled to sue thereon, in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal upon it." This section first appeared in the second edition of the work, published a short time before the death of the distinguished author. A careful examination of the numerous authorities then cited in support of it will show that perhaps not one of them sustains it to the full extent of holding it to be immaterial whether the principal is " known or unknown," unless *Bateman* v. *Phillips,* decided in 1812, 15 East 272, may be an exception. On the contrary, this unguarded statement of our great jurist has occasioned most of the decisions which might now be cited as going to that extent. The dictum of Baron PARKE, which we have already quoted from *Higgins* v. *Senior,* the leading case cited by Story, does indeed sustain him, and it was doubtless the authority on which he chiefly relied; but the point did not arise in that case, the question there being, not whether parol evidence is admissible to charge the principal in such a case, but whether it is admissible to discharge the agent,—which was decided in the negative, and is everywhere well settled. But in *Calder* v. *Dobell,* before cited, the precise question arose, and the decision sustains the section quoted from Story to the fullest extent; and such is now, unquestionably, the law in England.

In the American note to *Thomson* v. *Davenport*, 2 Sm. Lead. Cas., 7th ed., 378, [*375], the following appears: " It must not, however, be supposed that the right of the principal to enforce a contract made nominally with his agent, but really for his benefit, only exists where his name is not disclosed ; for although the liability to be sued, which arises under these circumstances, may be enough of itself to give the right of suit, yet the foundation of the rule lies deeper, in the reason indicated by Lord DENMAN [in *Trueman* v. *Loder*, before cited], that the signature of a duly authorized agent affixed to a writing for the purpose of binding the principal, is as much the signature of the principal as if the principal had subscribed the instrument. * * When the principal is disclosed, there is room for an argument that the omission of his name proceeds from a design to exonerate him, and look solely to the agent, which cannot be said when he is unknown and the vendor cannot determine which to charge. But when this presumption does not arise on the face of the writing, or is repelled by the circumstances, an action may be brought by or against the principal, whether he was or was not known to the other contracting party." We think, however, that Lord DENMAN intended to base the decision in *Trueman* v. *Loder* on the fact that the defendant carried on business in the name of his agent, and not upon the broad ground stated in the note.

However this may be, the English doctrine certainly cannot be regarded as established in this country, although several of the American cases which we have cited as authorities in favor of supporting an action by or against an unknown principal contain dicta which are equally applicable to a known principal, and the doctrine appears to have been adopted in the two following cases. In *Ide* v. *Saddler*, decided in 1853, 18 Barb. 32, an action in favor of a principal (but whether disclosed or undisclosed does not appear), upon a written instrument executed in the name of the plaintiff's agent, was sustained upon the ground that evidence that the plaintiff was the real contracting party does not contradict, vary, or explain the writing, but " merely goes beyond it to establish a new and independent fact." And in *York County Bank* v. *Stein*, decided in 1866, 24 Md. 447, it is laid down in the head note that " The law is well settled, that the principal is personally responsible in all cases of contracts made by an agent within the scope of his authority ; and this is not varied by the fact that the agent contracts in his own name, whether he discloses his agency or not, provided the circumstances do not show that an exclusive credit was given to the agent."

It has been conceded, in the argument for the defendants, that the statute of frauds interposes no obstacle to the maintenance of an action against a principal, although the note or memorandum required by the statute is signed by his agent, and the name of the principal nowhere appears in it ; and it has been intimated that this may be so because the statute expressly authorizes the agent to sign such a note or memorandum. But it has been strenuously contended that although this is admissible in the case of a note or memorandum in writing of an oral

contract, it is essentially different in the case of a written contract, which supersedes all preceding negotiations, and is conclusive evidence of the contract between the parties.

This subject is elaborately treated in the English note to *Thomson* v. *Davenport*, 2 Sm. Lead. Cas., 7th Am. ed., 366, [*369], in which it is laid down that parol testimony " never can be heard for the purpose of discharging the agent, but may always be for that of charging the principal," notwithstanding " that inflexible rule of the law of evidence, that the terms of a written contract cannot be qualified or contradicted by parol testimony ; " and this, if we may construe what is said about charging the principal as referring only to an undisclosed principal, we are convinced is the true rule, subject to the exception already stated where the name of the agent is the business name of the principal. Although the author of the note does not appear to have recognized any such distinction, we are of the opinion that where a principal is sought to be charged upon a contract in writing, made in the name of his agent, the rule of evidence, which prohibits the parties to a written contract from contradicting or varying its terms by parol testimony, applies if the principal was known, but not if he was unknown.

We have already shown that there is no difficulty in sustaining an action upon an express, verbal contract against or in favor of an unknown principal, while if the principal was known it is to be presumed that he was the contracting party, unless it clearly appears that the agent contracted on his own account, and that with a knowledge of the facts the opposite party elected to look to the agent. Now, so far as the question of election is concerned, it is the same whether the contract was verbal or written, except as a written contract may furnish evidence of an election to deal exclusively with the agent whose name was inserted in it. But does it not furnish conclusive evidence of such election ? Is parol testimony admissible for the purpose of charging a principal upon a written contract made in the name of his agent ? In order to determine this question, it may be useful to ascertain the reason for the rule of evidence to which we have referred, and whether it actually calls for the rejection of such testimony, either in the case of a known or of an unknown principal, or of both. The reason assigned by Lord Coke is, that " it would be inconvenient that matters in writing, made by advice and on consideration, and which fully impart the certain truth of the agreement of the parties, should be controlled by averment of the parties to be proved by the uncertain testimony of slippery memory." *Countess of Rutland's case*, 5 Rep. 26a. In other words, the reason for the rule is, that the written instrument furnishes the best evidence of the actual agreement; that it is more probable that the contract which the parties intended to make can be correctly ascertained from what was written than from the testimony of witnesses. But the party seeking to bring in an unknown principal starts by admitting that the contract was written according to the agreement; that his intention was to look to the,

agent alone, just as he would admit his intention was if the contract had been merely verbal. How could he deny, whether the contract was verbal or written, that he intended to look to the agent, if he did not know that any principal existed ? The spirit of the rule, therefore, is not violated by giving him a right, in the case of a written as in the case of a verbal contract, to bring in the party who had the beneficial interest in the transaction; and this is accomplished, not by contradicting or varying the terms of a written instrument, but by applying and giving effect to an established rule of law.

But if the principal was known when the contract was made and signed, the case is different. If the party who received from an agent a written contract executed in the name of the agent, knowing that he acted for a principal, seeks to hold the principal, it must be upon the ground that it was intended to be and was received by him as the contract of the principal; because, if he received it as the contract of the agent, knowing that he was an agent, that constitutes a conclusive election to look alone to the agent. Parol evidence, therefore, if admitted in such a case, does show that the contract which the parties intended to make was not what the writing indicates, but different. It shows that an error was committed in writing it. Its admission, therefore, allows " the uncertain testimony of slippery memory " to come in and control what the parties have deliberately written and signed, and this is inadmissible because the writing furnishes the best evidence of the actual contract.

Whether the admission of parol evidence, that the party who executed a written agreement in his own name was acting as agent for an undisclosed principal for the purpose of discharging the agent from liability, violates this rule of evidence, it is unnecessary to discuss. It seems, however, that it does not. As the agent in such a case is estopped from denying his liability even when the contract was verbal, he must of course be equally estopped when it was written. But if the evidence is that it was understood by the parties that the contract, which was executed by the agent in his own name for his principal, was the contract of the principal and not of the agent, although the question of estoppel is avoided, it is plain that this does contradict and vary what is written. It allows the agent to show by parol evidence that the contract was not drawn up as the parties intended; that it contains, not the agreement which they actually made, but something else. It is, therefore, inadmissible, as all the authorities hold.

Our conclusion therefore is, that where there is a written contract not under seal, executed in the name of an agent, parol evidence is admissible for the purpose of charging an unknown principal, but not for the purpose of charging a known principal, and that it is inadmissible for the purpose of discharging the agent whether the principal was known or unknown. The result reached, in holding the agents liable, in *Savage* v. *Rix*, before cited, was therefore right, although we hold the rule laid down in that case, that " in order to bind the principal by a written contract executed by an agent, it must in some way

appear from the written instrument to be the contract of the principal," to be erroneous.

In accordance with these views, no judgment can be rendered upon the findings of the jury in this case. Although the jury found that Dunn in making the contract did act as the agent of the defendants, yet the plaintiff having testified and his counsel insisted that when it was made he was fully informed by Dunn of his agency, and having prevented the judge from submitting that question to the jury, we might, were there no other point in the case, assume that to be so, and order judgment for the defendants, upon the ground that the written contract, as it cannot be contradicted or varied by parol testimony, furnishes conclusive evidence of an election by the plaintiff to look to Dunn alone as the other contracting party; but the plaintiff, as was shown at the commencement of this opinion, was entitled to a verdict if the contract was entered into by Dunn, as agent for the defendants, in his own name as their business name. If that was so, it is immaterial whether the plaintiff was or was not informed of the agency. The judge therefore erred in not submitting that question to the jury, unless this was waived by the plaintiff. The defendants claim that the plaintiff took no such position at the trial; but the plaintiff insists that he did distinctly take the position at the trial, and that the reserved case expressly so states. Whether the language of the reserved case will bear such a construction is not very clear, but it is evident that this may be an important question between these parties, and that the case was tried by counsel under a misapprehension of the law; and, after some hesitation, we have concluded that we ought to hold the trial to have been a mistrial in this respect, and, before ordering judgment for the defendants, to give to the plaintiff an opportunity to go to the jury upon the question whether the contract was entered into by Dunn as agent for the defendants in his own name as their business name. On the other hand, although Dunn, being called by the defendants, testified that he gave the plaintiff no information in regard to the agency—in fact, that none existed—and the jury have found that Dunn in making the contract did act as the agent of the defendants, this court is not at liberty to assume that the testimony of Dunn upon this point was true and that of the plaintiff untrue, for the purpose of ordering judgment in favor of the plaintiff against the defendants as undisclosed principals. Therefore, in the view we take of the law, if we assume the findings of the jury to be correct, this case is peculiar in this, that the defendants were not entitled to a verdict, unless the testimony of their agent, who was called by them as a witness, was false; and the plaintiff, so far as the case rests on the relation of principal and agent alone, was not entitled to a verdict, unless his own testimony was false, although he may have been entitled to it on another ground.

*Case discharged.*