# CASES DETERMINED

AT THE

## January Term, 1886.

GANO, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*March 18 — April 6, 1886.*

CONTRACTS: AGENCY. *(1-3) Authority of agent: Evidence:* Res gestæ: *Declarations. (4) Statute of frauds: Entire contract: Part performance.*

1. Where, before closing a contract for the sale and delivery of chattels to his principal, an agent wished to ascertain the ability of the vendor, and for that purpose went with him to a bank, where, upon learning that means would be furnished to the vendor, the contract was deemed to be consummated, evidence of the declarations of the agent made at that time to the banker, as to terms of the contract and his authority to make it, are admissible in an action against his principal.

2. An error in admitting evidence as to the statements of an agent concerning a contract made by him on behalf of his principal, made after the consummation of such contract, is cured if the agent afterwards testifies that he did not make such statements. *Rounsavell v. Pease*, 45 Wis. 506.

3. A finding of the jury that the facts and circumstances, existing at and before the time when an alleged contract was made with C. for the sale and delivery of 1,200 yards of stone for a culvert, warranted the plaintiff in believing that C. had authority to bind the defendant company by the purchase of such stone, *held* to be sustained by the evidence.

4. Upon the evidence and the verdict in this case it is *held* that a contract for the sale of 400 yards of stone to be delivered at one place and 1,200 yards to be delivered at another, was a single, indivisible contract, and that a partial performance by the delivery, acceptance, and payment for a portion of the 400 yards took the entire contract out of the statute of frauds, though no portion of the 1,200 yards was ever delivered.

APPEAL from the Circuit Court for *Monroe* County.

Action to recover damages for the breach of a contract for the sale and delivery by the plaintiff to the defendant of 1,600 yards of stone. The cause was before this court on former appeals, and is reported in 49 Wis. 57, and 60 id. 12.

The evidence given on the last trial was substantially the same as that given on the previous trials. The testimony of Mr. Vittum, referred to in the opinion, was to the effect that he was a banker in Baraboo; that in June, 1878, the plaintiff and Celluyham came to the bank, and the latter wanted to know " what backing *Gano* had for getting out stone;" that he (Vittum) told Celluyham that when *Gano* had any arrangements with the railroad company by which it was to receive and pay for stone, he would advance the money to pay *Gano's* men, and take the vouchers; that Celluyham then told him he was going to let *Gano* put in 1,200 yards of stone for the Crawford bridge and 400 yards for the culvert at Devil's Nose, at $3 per yard; that Vittum said if he could have the measurements every thirty days he would advance to *Gano* sufficient money to pay his men, and take the vouchers, and Celluyham said he would give him the measurements every thirty days; and that, in reply to a question by Vittum, Celluyham said he was authorized to make the arrangements.

The jury found as a special verdict, among other things, (1-3) that the plaintiff and Celluyham agreed that the company would buy absolutely 400 yards of stone for the Devil's Nose culvert, and 1,200 yards for the Crawford culvert,

Gano vs. The Chicago & Northwestern R. Co.

at the price of $3 per yard; (4) that Celluyham was never authorized by the defendant to contract for the purchase or delivery of 1,200 yards of stone for the Crawford culvert, (7) and that the company never ratified the contract for such 1,200 yards; (5) that the facts and circumstances existing at and before the time the alleged contract with Celluyham was made, warranted the plaintiff in believing that Celluyham had authority to bind the company by the purchase of 1,200 yards of stone for the Crawford culvert; (8) that no stone was ever delivered by the plaintiff in fulfilment of any contract for 1,200 yards of stone for the Crawford culvert; (9) that 208 yards of dimension stone were delivered by the plaintiff under the contract for the Devil's Nose culvert, (10) and the same was paid for in full; (11) that if the plaintiff had delivered more stone, at the price of $3 per yard, he would have made a profit of fifty cents per yard; (13, 14) that the plaintiff sold and delivered to the company $7\frac{1}{4}$ cords of wall stone, at $4 per cord, for which he was not paid by the company.

A motion by the defendant to set aside the special verdict and for a new trial, for the reason that the fifth finding was against the weight of evidence, was denied, and the plaintiff moved for judgment. The defendant objected to any judgment for damages claimed with respect to the 1,200 yards of stone for the Crawford culvert, upon the ground that the contract therefor was void under the statute of frauds, and also because the jury had not found that Celluyham had been clothed with any apparent authority by the company. The objection was overruled, and judgment was entered upon the verdict for $725, damages, and costs. The defendant appeals from the judgment.

For the appellant there was a brief by *F. J. Lamb*, attorney, and a separate brief by *Jenkins, Winkler, Fish & Smith*, of counsel, and the cause was argued orally by *Mr. Jenkins* and *Mr. Lamb*. They contended, *inter alia*, that

the contract with Celluyham, and his declarations at the time of the contract, could only be allowed in evidence after the fact of his agency or that he had been clothed by the company with apparent authority had been proved. *Jones v. Lake*, 2 Wis. 210; *Gibbs v. Holcomb*, 1 id. 23; *Davis v. Henderson*, 20 id. 520. The declarations made to Col. Vittum as to the subject matter of the contract were made on the same day with the alleged contract, but after it had been finally closed, and were no part of the *res gestœ*, and were inadmissible. See *Mil. & Miss. R. Co. v. Finney*, 10 Wis. 388; *Livesley v. Lasalette*, 28 id. 38, 41; *Rogers v. McCune*, 19 Mo. 558; *Waldele v. N. Y. C. & H. R. R. Co.* 95 N. Y., 285; *P., C. & St. L. R. Co. v. Theobald*, 51 Ind. 249; *Packet Co. v. Clough*, 20 Wall. 528; *Austin v. Austin*, 45 Wis. 523; *Prideaux v. Mineral Point*, 43 id. 531; Story on Agency, sec. 135. The declaration to Col. Vittum to the effect that he was authorized to make the contract was inadmissible for the same reason, and also upon other grounds. Declarations of an agent with respect to his authority are not competent to be considered in forming a belief thereof. *Korneman v. Monaghan*, 24 Mich. 36; *Rice v. Pen. Club*, 52 id. 87; *Gifford v. Landrine*, 37 N. J. Eq. 127; *Roebke v. Andrews*, 26 Wis. 311; *Davis v. Henderson*, 20 id. 520.

*J. W. Lusk*, for the respondent.

ORTON, J. This case has been in this court twice before (49 Wis. 57; 60 Wis. 12), and the facts appear in the former appeals, and no material difference in the evidence appears to have been made on the three trials. The same exceptions to the admission of evidence to prove the statements of Celluyham, the alleged agent of the company, in respect to the contract he had made with the plaintiff for the 1,600 yards of stone, and his authority to make it, were assigned on the first appeal, but not noticed, or were disregarded in

the opinion.    These exceptions will first be disposed of. It is sufficient to say, as to Mr. Vittum's testimony of Celluyham's statements to him, or in his presence, that, according to the evidence given by the plaintiff as a witness, the bargain had not been consummated when such statements are alleged to have been made.    Celluyham wished to ascertain the ability of the plaintiff to perform so large a contract, and he went to see Mr. Vittum, the banker, with the plaintiff, to ascertain whether the plaintiff could obtain money from the bank needed in carrying out the contract, and it was ascertained that the means could be obtained, and the manner of their advancement and security, and from that time the plaintiff claims the contract was concluded.    The testimony of Vittum was not, therefore, liable to objection.

As to the testimony of other witnesses of Celluyham's statements, the error, if any, was cured by the subsequent testimony of Celluyham himself that he did not make them, thus converting the testimony into the contradiction of Celluyham's evidence, and making it competent, except in order of time, which was in the discretion of the court. This precise point was so decided by this court in *Rounsavell v. Pease*, 45 Wis. 506.    But, aside from any such technical rule, the evidence seems to me to have been proper as showing the conduct of Celluyham generally, and the circumstances connected with it in respect to the subject matter of the contract, with a view of showing his apparent general authority to purchase stone of the plaintiff for the company's works.    If he had such an apparent general authority or agency, then, by the authorities cited by the learned counsel of the appellant, such statements were within such authority, and would bind the company.    It is not contended that such statements would not bind the company if made by a general agent; but that, Celluyham's agency being special and limited in respect to the purchase of stone, his statements showing that he was a general

agent, or had authority to purchase stone not within such special and limited agency, would not bind the company. What was that apparent authority? was the vital question in the case. The authority of Celluyham to purchase 400 yards of stone does not seem to have been seriously controverted on any of the trials. We must accept as true, by the finding of the jury, that he had no authority to purchase any more, but we must also accept as true, by the finding of the jury, that " the facts and circumstances existing at and before the time the alleged contract with Celluyham was made, warranted the plaintiff in believing that Celluyham had authority to bind the company by the purchase of 1,200 yards of stone for the Crawford culvert." Such an *apparent* authority had been already held by this court to be equivalent to actual authority to bind the company. This being so found, it seems to me that Celluyham's statements in respect to the 1,200 yards of stone were within his agency, or, which is the same in legal effect, his apparent agency. But, whether this be so or not, the evidence of Celluyham's statements was made proper by his subsequent denial of them.

The finding last above quoted was excepted to for not being sustained by the evidence. We think this fifth finding is amply sustained by the evidence. Celluyham was the foreman and boss mechanic in charge of the stone and mason work of the company in that part of the state, and must be presumed to have known as well as, if not better than, any one else the kind and quantity of stone required for any particular work. He was the man in authority, generally present, and accessible to those furnishing materials. He had authority to employ and discharge men on his works and fix their compensation. He had before bought rubble-stone for the works, and they had been paid for by the company, and he had direct authority to purchase 400 yards of stone of the plaintiff, and did so without

disclosing any limitation of his authority. He was acting for a corporation that could not be personally present except through its agents, and no one would be likely to question his authority, or suspect the want of it, within the general scope of his business as the master mason of the company to purchase the materials for the works within his charge. "When a party deals with a corporation in good faith, and he is unaware of any defect or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists." *Merchants' Bank v. State Bank*, 10 Wall. 644. "The authority of the agent being limited to a particular business does not make it special. It may be as general in regard to that as if the range of it was unlimited." *Anderson v. Coonley*, 21 Wend. 279; Story on Agency, 17, 20. Taking all the circumstances together, they seem to us to make a very strong case of apparent general authority of Celluyham to purchase all the stone he might require for the works under his charge, and to sustain the finding in question.

The additional point is made in the able brief of Mr. Lamb on behalf of the company that the contract was divisible, and that for the 1,200 yards of stone was void under the statute, because no stone was delivered under and no payment made upon it. If the contract for the 400 yards of stone was separate and independent from that for the 1,200 yards, the learned counsel certainly sustained his position both by reason and authority. The confusion from which any doctrine of the divisibility of contracts is made to apply to this case has evidently arisen from the former verdict and the peculiar findings of the jury on the last trial, and from the careless and inapt use of the term divisibility. The fifth finding only concerns the contract for the additional 1,200 yards; the 400 yards being out of the question as having been directly authorized. The question on

the trial was whether the contract — the one and only contract made — was authorized for 400 yards or for 1,600 yards. It is not in the evidence, and no one contends, that there was any more than one contract made, and the evidence tends strongly to prove, and the jury must have found, that the contract was for 1,600 yards of stone. The jury, in finding that there was apparent authority of the agent Celluyham to contract for the 1,200 yards, in effect found that he had, so far as the plaintiff is concerned, authority to contract for the whole 1,600 yards. This question whether he was authorized to contract for the 400 yards only, or for so much and the additional 1,200 yards, making in all 1,600 yards, is miscalled divisibility of the contract when in fact there is no divisibility. The contract authorized by direct and *apparent* authority together was for the 1,600 yards, and an entirety. As the case now is on the findings, the stone delivered was in part performance of the contract, and it is thereby taken out of the statute. This follows as a natural and necessary sequence. This is the first time in the long and eventful history of this case that this question has been raised, and, with due respect to the learned counsel, we are compelled to say with the learned circuit judge: "That the contract was void for the statute of frauds I [we] hardly think is tenable." The point may be very faintly *specious*, but it is certainly not in the case.

The general verdict, finally, was for the plaintiff, $725 on the basis of fifty cents profit on each yard not delivered of the 1,600 yards, and 7¼ yards delivered and not paid for, at four dollars per yard. This effectually destroys the divisibility of the contract.

*By the Court.*— The judgment of the circuit court is affirmed.

LYON, J. When this case was before us on the second appeal therein (60 Wis. 12), Mr. Justice TAYLOR and I were

of the opinion that Celluyham was only the special agent of
the defendant company to buy the stone for the Devil's
Nose culvert; and that there was no evidence tending to
prove facts which would justify the plaintiff in assuming
that he also had authority to contract for the stone for the
Crawford crossing, or to show a ratification by the company
of such unauthorized act if he did so contract. But our
brethren were of a different opinion, and their opinion be-
came the judgment of the court.

The case now comes here again on substantially the same
evidence. Although we dissented from the former judg-
ment, it is binding upon the court and parties. The rulings
of the circuit court were in strict accordance with its require-
ments. It seems inevitable that the judgment of that court
must be affirmed. We concur in the affirmance thereof,
because the former judgment is *res adjudicata* upon the
questions presented upon this appeal.