Conroe, Respondent, vs. Case, Appellant.

*March 4— March 17, 1891.*

*Principal and agent: Question for jury.*

Where, in an action against C. upon a promissory note signed F. B. &
Co., it appeared in evidence that F. B. & Co. were doing no business
of their own, but were carrying on a manufacturing business as
agents for C., who furnished the necessary money, and held himself
out as their principal and liable upon all notes given by them in
the business, and had authorized them to sign notes therein either
" F. B. & Co., Agents," or simply " F. B. & Co.," *held*, that the note
in suit, though made to run for five years, with interest payable
annually, was presumably the note of the defendant C., and he was

Conroe vs. Case.

liable thereon to the purchaser thereof, unless there was sufficient on its face to put such purchaser upon inquiry as to the agent's authority to give it in that form, and that question was one for the jury.

APPEAL from the Circuit Court for *Waukesha* County. The case is very fully stated in the opinion.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.* They argued, among other things, that an agent employed in manufacturing has no implied authority to bind his principal by a negotiable note for labor and materials. *Paige v. Stone,* 10 Met. 160. Nor can an agent authorized to give notes payable in a short period, bind his principal by one payable after a long period, as is this note. *Balty v. Carswell,* 2 Johns. 48; *Tate v. Evans,* 7 Mo. 419; 1 Daniel, Neg. Inst. §§ 291, 292, *et seq.* The fact that this note is to run for five years with interest payable annually is an unusual circumstance, which made it the duty of an intending purchaser to inquire into the agent's authority to issue it in that form. *N. Y. Iron Mine v. Citizens' Bank,* 44 Mich. 344. The plaintiff's agent bought the note with knowledge that the agency had ceased, and without any inquiry as to defendant's liability thereon, and also without the indorsement of the payee, and it was subject to all defenses against such payee. *Crosby v. Roub,* 16 Wis. 616; *Howard v. Boorman,* 17 id. 459. There was no consideration for the note going to the defendant. If it was given in compromise of a claim between the parties to it, the defendant had no interest therein. *Ecker v. McAllister,* 84 Md. 362; *Hartle v. Stahl,* 27 id. 172; *Stoddard v. Mix,* 14 Conn. 12; *Jarvis v. Sutton,* 3 Ind. 289; *Graham v. Johnson,* 8 L. R. E. C. 36; *Rue v. Meirs,* 43 N. J. Eq. 377.

For the respondent there was a brief by *Dodge & Fish,* and oral argument by *John T. Fish.* They contended that defendant had authorized the use of the name F. B. & Co.,

and adopted it as his business name for that business, and was bound thereby. *Bank of Rochester v. Monteith*, 1 Den. 402; *S. C.* 43 Am. Dec. 681; *Chandler v. Coe*, 54 N. H. 561; *Devendorf v. West Va. Oil Co.* 17 W. Va. 135, 174; *Crocker v. Colwell*, 46 N. Y. 212; 1 Daniel, Neg. Inst. § 304. The borrowing of money and giving notes was a very frequent transaction in that business and was authorized. As the agents were carrying on no other business, the purchaser was justified in presuming that the note was given in the principal's business. *Etheridge v. Binney*, 9 Pick. 272. The consideration was sufficient.

TAYLOR, J. This action was brought by the respondent to recover the amount of a promissory note, of which the following is a copy:

"$2,000.00.        RACINE, WISCONSIN, February 5, 1879.

"Five years after date, for value received, we promise to pay A. C. Fish, or order, at ———, two thousand dollars, with interest at the rate of seven per cent. per annum till paid, interest payable annually.

        "[Signed]        FISH BROS. & CO.
"No. 1911."

The plaintiff sought to recover in the action upon the ground that the signature to said note of "Fish Bros. & Co." was in fact the signature of the defendant, *Jerome I. Case*, and that he was as much liable for the payment of said note as though the same had been signed by the proper signature of said defendant *Jerome I. Case*. The plaintiff, in her complaint, alleges as follows:

"*First.* That the defendant above named, from 1873 until December, 1880, was carrying on the business of manufacturing and selling wagons at the city of Racine, Wis., under the firm name and style of Fish Bros. & Co., Agents, and Fish Bros. & Co., which business at all the times hereinafter mentioned was managed and conducted

by John C. Huggins, Titus G. Fish, and Edwin B. Fish, as agents of the defendant, *Jerome I. Case*, and were by him authorized to purchase goods, borrow money, and incur indebtedness, and to give promissory notes and other evidences of debt on behalf of said defendant, under said business or firm name of Fish Bros. & Co., and Fish Bros. & Co., Agents.

" *Second.* That said firm of Fish Bros. & Co. were engaged in no other business during the years above mentioned except in conducting the business of the defendant, and had no partnership existence or business save as agents for defendant, and that said parties, under said firm name, were in the habit of giving large numbers of promissory notes therein, to the knowledge and with the approval of the defendant, and the defendant at all the times gave out and represented to the public, and also to the agent of this plaintiff, that he was liable for all debts contracted by the parties above named, whether notes were executed by them in the name of Fish Bros. & Co., Agents, or in the name of Fish Bros. & Co.

" *Third.* That the plaintiff is informed and believes that on or about the 5th day of February, 1879, said firm of Fish Bros. & Co. made, executed, and delivered one certain promissory note in the words and figures following:

" $2,000.00.          RACINE, WISCONSIN, February 5, 1879.

" Five years after date, for value received, we promise to pay to A. C. Fish, or order, at ———, two thousand dollars, with interest at the rate of seven per cent. per annum till paid, interest payable annually.

" ' [Signed]                              FISH BROS. & CO.

" ' No. 1911.'

" That in the ordinary course of business, and with knowledge of the above facts, and relying upon the defendant's responsibility, the plaintiff purchased said promissory note before maturity, and for full value, without notice of any

Conroe vs. Case.

defenses thereto or defects therein, and the same was on or about December 4, 1880, duly indorsed, transferred, and delivered to this plaintiff.

"*Fourth.* The plaintiff further alleges on information and belief that before purchasing said note the agent of this plaintiff, who had dealt largely in the paper of the defendant given by his said agents under the business name aforesaid, made inquiries of the defendant whether or not he was liable upon the notes given by the said firm of Fish Bros. & Co., in form and signed as the note aforesaid, in response to which inquiry the defendant stated that he was liable; and in purchasing said note in behalf of this plaintiff the agent of this plaintiff and the plaintiff herself relied upon such statements, and paid the money for said note.

"*Fifth.* That in purchasing said note the plaintiff relied upon the facts hereinbefore set forth, and upon said statements of the defendant, and upon the credit and responsibility of the defendant, and understood and believed the said promissory note to be the note and obligation of said defendant."

And then concluded by alleging its non-payment, except as to a part of the interest, and demands judgment.

The defendant, in his answer, denies all the material allegations in the complaint, and then makes the following statement as to his connection with the business carried on in the name of "Fish Bros. & Co.:"

"*Sixth.* That prior to the year 1868 the said Titus G. Fish and Abner C. Fish, in said complaint mentioned, were engaged in the business of manufacturing and selling wagons and carriages at Racine, Wisconsin, under the firm name of Fish Bros., and in the prosecution of such business became indebted in upwards of $100,000 in amount, and to this defendant in the sum of $25,000, and in the latter part of the year 1867 became and were insolvent and unable to

Conroe vs. Case.

pay their said indebtedness in full, and had not property or
assets to pay more than forty per cent. of their said indebt-
edness; that thereupon the said Titus G. Fish and Abner C.
Fish entered into a contract or agreement with this de-
fendant, whereby this defendant agreed to purchase all the
outstanding indebtedness of said Fish Bros. at the rate of
forty cents upon the dollar thereon, and to acquire and be-
come the owner of all the property and assets of the said firm
of Fish Bros., and thereafter to carry on the said business
of manufacturing and selling wagons in his own name, the
said Titus G. and Abner C. Fish to act therein as his agents,
and that when this defendant should realize from the said
business the said indebtedness of the said Fish Bros. to him,
and such amount as he should pay to purchase the said in-
debtedness of the said Fish Bros., and such advances as he
should from time to time make in the conduct of the said
business thereafter, with interest at a rate agreed upon for
all such indebtedness and advances, and compensation for
the use of his name and credit in the said business, and for
his time and services in the said business, that then the
residue, if any, should be returned to the said Titus G.
and Abner C. Fish, and they should thereafter own the
said business; that thereupon this defendant acquired the
title to all the property of the said Fish Bros., and con-
tinued and carried on the said business under such arrange-
ment and agreement, the said Titus G. and Abner C. Fish
acting therein as the agents of this defendant, and this de-
fendant was personally responsible for the liabilities of the
said business as then conducted, and said business was con-
ducted under the name and style of Fish Bros., agents for
*J. I. Case,* until about the year 1873, when John C. Hug-
gins and Edwin B. Fish acquired the interest of the said
Abner C. Fish in said business, and became interested with
the said Titus G. Fish as the agents of this defendant in the
conduct of such business, and entitled to the residue thereof,

as hereinbefore alleged, and that said business was thereafter continued by the said Titus G. Fish, Edwin B. Fish, and John C. Huggins, and was carried on under the name and style of Fish Bros. & Co., Agents, for and on behalf of this defendant, who continued as principal therein until the spring or summer of the year 1880."

The defendant then goes on to state the difficulties which arose in relation to said business between himself and Fish Bros. & Co. after the spring of 1880, and then makes further allegations in regard to the note upon which this action is brought as follows:

"That the note in the complaint set forth, if any such note was given, was executed by the said Titus G. Fish, and delivered to his brother, Abner C. Fish, the payee in said note mentioned, either without any consideration whatever, or for some personal obligation or debt of his own or of the said Titus G. Fish, Edwin B. Fish, and John C. Huggins, or one of them; that no notes were ever executed or given by the said agents of this defendant in the prosecution of the said business, signed 'Fish Bros. & Co.,' but that all notes given for the purposes of the said business were signed 'Fish Bros. & Co., Agents,' and not otherwise, up to the time of the said action so brought by this plaintiff; and that the act of the said Titus G. Fish, Edwin B. Fish, and John C. Huggins was without authority of this defendant; and that said note, if so executed, was not so done in the prosecution of the said business, or within the scope of their said agency, nor did it so purport to be, but was the individual obligation of the said Titus G. Fish, Edwin B. Fish, and John C. Huggins, and not otherwise; and that the said Abner C. Fish received the same well knowing that to be the fact, and that the plaintiff, in receiving the same from the said Abner C. Fish, well knew that it was not the obligation of said business, and that it was not given for anything connected with this defendant

or with said business, but was the individual obligation of the said Titus G. Fish, Edwin B. Fish, and John C. Huggins; and he denies that there is any sum whatever due or owing to the plaintiff by this defendant on account or by reason of any matter, fact, or thing in said complaint stated or contained."

Upon these pleadings the action was tried, and a verdict and judgment was rendered in favor of the plaintiff for the amount unpaid on the note, and the defendant appeals to this court.

Upon the trial the contention of the plaintiff was that the note in question was the note of the defendant, as much so as if it had been signed by him personally. That having been signed by the business name of the defendant used in carrying on the manufacture of wagons, etc., as set forth in the defendant's answer, the plaintiff or her agent in purchasing said note was authorized to presume that the note was given in the prosecution of such business by the defendant under the style and name "Fish Bros. & Co.," and that the plaintiff or her agent was not chargeable with notice, in fact that it was not so given, nor was there anything on the face of the note which would charge him with such notice, if it was not in fact given in the prosecution of the defendant's said business. It was also claimed on the trial that there was affirmative evidence given on the part of the plaintiff sufficient to authorize the jury to find that this particular note was, in fact, given in the business of said defendant in the ordinary mode in which said business was carried on.

On the part of the defendant it was claimed on the trial that, although the note was signed with the name by which the defendant carried on his business of manufacturing wagons, etc., that it was not in fact given for anything connected with said business, but was given by the said Fish Bros. & Co., his agents, for a purpose entirely foreign

Conroe vs. Case.

to his business, and solely for the personal interest of certain persons who claimed to be interested in, and who in fact constituted, the firm of Fish Bros. & Co.; and it is also claimed by the defendant that there was sufficient appearing on the face of the note to charge the agent of the plaintiff with knowledge of the fact that the note was not one made in the business of said defendant which he carried on in the name of "Fish Bros. & Co." These objections are made as grounds for reversing the judgment in this court. It is also assigned as error in this court that the learned trial judge improperly submitted the question to the jury as to whether the note was executed with the consent of the defendant, with the intent that he should be bound to the payment thereof as a note issued in his said business. It is also alleged as error in this court that the trial judge misdirected the jury upon the question as to whether the note had been indorsed by the payee when it was purchased by the agent of the plaintiff.

It will be proper, before considering the objections made by the learned counsel for the appellant to the recovery in this case, to state that the allegation made in the defendant's answer "that no notes were ever executed or given by the said agents [meaning Fish Bros. & Co.] of this defendant in the prosecution of the said business, signed 'Fish Bros. & Co.,' but that all notes given for the purpose of the said business were signed 'Fish Bros. & Co., Agents,' and not otherwise, up to the spring of 1880," was not sustained by the evidence given on the trial. On the contrary, there were notes so signed, "Fish Bros. & Co.," given in said business with the knowledge and consent of the said defendant long previously to the giving of the note in controversy in this action. It may be also remarked that for the purposes of this action the other statements of the defendant in his answer above quoted as to his relation to the business carried on by Fish Bros. & Co. at the time the note in question

was given may be taken as true and sustained by the evidence; and I think it must also be taken for granted in this case that the note in question was not given in the ordinary business carried on by said defendant in the name of "Fish Bros. & Co." The evidence tends to show that, after the defendant assumed the conduct of the business of manufacturing, formerly carried on by the insolvent firm of T. G. & A. C. Fish, the business prospered to such an extent that there was a reasonable hope that it would soon pay off all claims of the defendant under his contract with his agents, and that large interests would accumulate which would ultimately belong to his agents. This contingent interest of the agents was deemed valuable, and with the consent of the defendant was sold and transferred to other parties, who took the places of those retiring, as his agents.

The note in question was in fact given by "Fish Bros. & Co." in settlement of a claim which said A. C. Fish made against the then existing firm of "Fish Bros. & Co.," growing out of the sale of his contingent interest in said firm of agents to the other members of the firm, made some time previous to the giving of said note.

On the part of the plaintiff it is claimed that the defendant had notice of this claim made by A. C. Fish, and that said Fish also threatened to commence an action not only against the agents of the defendant, but also against said defendant, to enforce his claim, and that, upon consultation with the defendant, it was thought best to avoid any litigation, as tending to injure the business not only of the agents, but the business of the defendant, and that thereupon this note and three others were given to settle said claim of the said A. C. Fish. It is also contended by the plaintiff that, after the notes were given, the defendant was informed of the fact, and made no objection thereto. These statements are controverted by the counsel for the defendant.

Upon the argument in this court the learned counsel for the appellant assign the following as errors:

"*First.* The court erred in refusing to direct a verdict for the defendant (1) because the plaintiff's agent was bound to make inquiry as to defendant's liability upon the note before purchasing it; (2) because the evidence is conclusive that plaintiff took the note without the indorsement of the payee.

"*Second.* The court erred in submitting to the jury the question of consideration for the note as between A. C. Fish and the defendant. There is no evidence from which the jury could properly proceed to find a sufficient consideration.

"*Third.* If the question of A. C. Fish's indorsement of the note was for the jury, defendant's fifth or seventh request should have been given.

"*Fourth.* The court erred in charging that there was a presumption that the note was given in the agency business.

"*Fifth.* The court erred in admitting evidence tending to show that it was customary for manufacturing concerns in Racine to obtain money on long time from parties outside of banks.

"*Sixth.* The court erred in receiving in evidence drafts, and in charging that such drafts were to be taken into consideration on the question of authority to make the note in question.

"*Seventh.* The court erred in receiving in evidence notes running from one to six months, and in charging that such notes were to be taken into consideration on the question of authority to make the note in question."

The first error assigned, we do not think can be sustained under the evidence. Under all the evidence in the record, we think it was a question for the jury, and not for the court, to say whether the note in question had been given in the form it was with the defendant's assent, and

with intent to be bound therefor. It is true, the testimony
is not very conclusive upon that point, but it left it so much
in doubt that there was no good reason for withdrawing it
from the jury. This being so, the second reason would also
fail, and the question as to whether the note was indorsed
by the payee at the time of the purchase would not be con-
clusive against the plaintiff's right of recovery.    There was
certainly sufficient evidence showing that it was indorsed
by the payee when it was offered as evidence, and that
would be sufficient to entitle the plaintiff to recover, if the
note was in fact the note of the defendant. The second as-
signment of error fails also for the reason above stated, that
there was some evidence sustaining the contention that
the defendant consented to the giving of the note in ques-
tion, because he considered himself interested in avoiding a
threatened lawsuit by said A. C. Fish.    The third assign-
ment of error is not well taken, for the reason that the fifth
instruction asked was not decisive of the case for the reasons
above stated, that, if the note was given with the knowl-
edge and assent of the defendant, with the understanding
that he was to be liable thereon, then the mere fact that the
indorsement was not made at the time the note was pur-
chased would not be material if it was shown to have been
indorsed before the trial.    And as to the seventh instruc-
tion asked and refused it was given in substance in the gen-
eral charge.

The fourth assignment of error, in our view of the case,
raises the most material question in the record.    But, from
an examination of the instructions given to the jury upon
that subject, we do not find that the court did instruct the
jury in direct terms that there was a presumption of either
fact or law that the note was given in the business of the
defendant.    What the court did say in regard to that mat-
ter is as follows: After having instructed the jury as to
the evidence tending to show that the defendant had knowl-

Conroe vs. Case.

edge of the giving of the note, and that it might have been given partly in the interest of the defendant, and submitting that question to them upon all the evidence, the learned judge then said: " If you find, gentlemen, that the note was not given in the business of the concern,— in other words that Mr. Case had nothing to do with the consideration, and no interest in the consideration, and that it was a matter solely for the benefit of Fish Bros. & Co.,— there comes another question in this case. *The presumption is, perhaps, that it was given in the business connected with the business of the agency; but, if you find that fact does not exist,— that that presumption is not true.*— then you come to another question, *Was there anything upon the face of the note, or the circumstances under which it was negotiated to Mr. Monroe, to put him upon inquiry as to whether the note was given within the scope of the agency or not?* "

The parts of the instruction in italics were excepted to by the defendant, and are mainly relied upon as a fatal error in the case.

Whether it was a fatal error or not depends upon the single question whether, as a matter of law, the note itself was conclusive evidence to the purchaser thereof that it was not given in the business of the defendant, and so would not bind him, unless the other evidence in the case showed that it was in fact made in the business of the defendant. It was the contention of the learned counsel in the former appeal in this case, as it is upon this appeal, that the holder of this note cannot recover upon the same unless she shows affirmatively that it was made in the business of the defendant and for the benefit of that business, for the reason that it shows upon its face that it was not so made, or, at least, it shows such facts on its face as would defeat the claim of the purchaser as a purchaser in good faith without any knowledge that it was given outside of the authority of the agents and outside of the defendant's business.

It is said by the learned counsel for the respondent that this question was decided against the appellant upon the former appeal in this case. In this, we think, the learned counsel are mistaken. Mr. Justice Lyon, in deciding that case, in the opening of his opinion says: "Aside from the question whether there was sufficient upon the face of the note in suit to put the plaintiff upon inquiry to ascertain if it was given in the course of the business of the agency for the defendant of Fish Bros. & Co. (a question not here decided), the controlling question in the case is, Did that firm have authority to bind the defendant by notes signed 'Fish Bros. & Co.' without the addition of the word 'Agents?'" And the decision of this court upon that appeal was that that question had not been properly submitted to the jury. It is true that upon a motion for a rehearing in that case this court was urged to pass upon the question first suggested, and not decided, but this court refused to change its ruling, and refused a rehearing upon that question; so that that question is now properly before this court for its decision.

On the part of the learned counsel for the appellant it is contended that the note itself is sufficient evidence on its face that it was not the note of the defendant, and that, in order to recover, the plaintiff must show affirmatively on her part that the note was given in furtherance of his business carried on by the said Fish Bros. & Co.; and on the part of the counsel for the respondent it is insisted that upon the production of the note, properly indorsed, executed by the name "Fish Bros. & Co.," and upon the other admitted or established facts in the case showing that the defendant was carrying on the business of manufacturing in the name of said "Fish Bros. & Co.," and his recognition of the fact that all notes, drafts, or other contracts, made in such business, and signed with the name "Fish Bros. & Co.," were to be considered his notes, drafts, or

contracts, the same as though he had executed the same by his own proper signature, the presumption is that this note was the note of the defendant.  It is not contended by the learned counsel for the appellant that the contention of the respondent should not prevail had the note been what is designated a " business " or " bankable " note,— that is, if the note had been payable in one, two, three, or four months, or even six months, from its date; but it is urged with great confidence on the part of the learned counsel for the appellant that a note for $2,000, payable five years after date, with interest payable annually, shows upon its face that it was not the note of the defendant given in carrying on his business of manufacturing in the name of said " Fish Bros. & Co.," and that the purchaser of such a note must be considered as having purchased it with notice that it was not given in said business so as to bind the appellant.

There is no dispute upon the evidence in this case but that the appellant held himself as bound to pay all notes, drafts, checks, or other contracts made in said manufacturing business and signed by Fish Bros. & Co.  If it be said that the appellant denies that there was any authority given to his agents to bind him by executing notes in that name, the answer to this denial is that the testimony in the case shows quite satisfactorily that the right to bind him by notes so signed in the business was given to Fish Bros. & Co.  The testimony of the appellant himself as to the extent of the authority of Fish Bros. & Co. to bind him by their signature, which was given in the action brought by him against said firm, and which was read in evidence in this case, gives the extent of such power, perhaps, as clearly and explicitly as any other evidence in the case, and I quote such evidence at length, as the best statement of the evidence upon which the ruling of the learned circuit judge upon this point was made.  It must be understood that the evidence quoted below was preceded by evi-

Conroe vs. Case.

dence showing that in 1868 A. C. and T. G. Fish had been
in the business of manufacturing wagons, and had failed.
The appellant then testified in regard to what took place
after such failure, as follows: "When it was ascertained
the creditors would not all come into the arrangement, by
advice of counsel, and upon conference with Fish Bros., it
was concluded to sue and put in judgment as much of
these claims as I then had taken up, have the execution
issued, and the property sold thereunder.   All the per-
sonal property that could be reached by execution, I was
to bid in.   I was to own and control the business.   Fish
Bros. should act as my agents in conducting and carrying
on the business, and in the end, when the business would
pay me the amount they owed me at that time, and for
the advances I should make thereafter, and the time and
trouble that I should be put to in the matter, interest
to be computed at ten per cent. annually, I was to give
back the concern into their hands again.   I then had the
claims put in judgment, execution issued, levy made, the
property sold, and I bid it in.   I also bought in under
the execution on the judgment in favor of Pratt & Com-
pany.   Upon the sales under the execution Titus G. Fish and
A. C. Fish entered upon the performance of their duties.
A salary was agreed upon of $1,200 a year that each had
a right to draw from the business; and Mr. Morey was
engaged as book-keeper, and they engaged him to keep
right on.   A new set of books was opened, and the shop
started up and the business proceeded.   I furnished the
money with which to carry on the business, and it was
carried on and conducted under the name of Fish Bros.,
Agents for *J. I. Case,* and I was responsible.   The goods
purchased were generally paid for by my agents, with
money furnished by me personally, and obtained through
the sales of my property.   I held myself out to the world
as personally responsible for all purchases made in that

Conroe vs. Case.

business from the time I purchased the property up to January, 1881, the time of the commencement of this suit. I also held myself responsible for any business done for the concern in the banks or otherwise, and so announced, whenever asked, as to all business connected with the matter. The financial part of the business during these years was done with the Manufacturers' National Bank of Racine, First National Bank of Burlington, in the First National Bank of Milwaukee, and the First National Bank of Racine; principally with the bank first named. I also held myself responsible to the Manufacturers' National Bank of Racine, and at one time gave a written contract, and also notified the First National Bank of Burlington, that I was liable for all the indebtedness Fish Bros., Agents, should contract. I also notified the First National Bank of Racine. Mr. Monroe, the cashier of the latter bank, at one time asked me that where the papers were signed 'Fish Bros. & Co.,' in connection with my business, if I held myself responsible; and I told him I did, and he said he supposed so. He said they had been lately in the habit of signing some of their matters as 'Fish Bros. & Co.' This was in the summer of 1880. In 1879, I think, Titus G. Fish told me that he was in hopes I would be paid up pretty soon, and that they could get the business into their hands, and wanted to know if I had any objections to his signing, wherever he could, the name of Fish Bros. & Co., and leaving off the 'agents,' giving as a reason that they would slide off easier into that line of business when they were able to take it into their own hands. I told him I had no objections. After the execution sales (in 1868) the Bradstreet Commercial Agency inquired of me with reference to whether I held myself responsible for the debts of the business. I was also similarly inquired of by parties dealing and selling goods to the business, by letter and verbally, perhaps fifty or a hundred times, and I answered invariably that I considered myself liable

for all the indebtedness of Fish Bros., Agents, or Fish Bros. & Co., Agents, and from the time of the execution down to the commencement of this suit I held myself out to the world as personally responsible for all the indebtedness incurred in that business. The reduction in the rate of interest I secured in 1878 or 1879. I told Titus G. Fish to get money where it could be got the cheapest, but I preferred to have the business done with the Manufacturers' National Bank. I frequently told them that; I think as early as the year 1876 or 1877. I made no objection to Fish Bros. & Co. signing notes, papers, etc., without the designation 'agents.' T. G. Fish had requested it personally, for the purpose I mentioned; and I told him I had no objection. It did not make any difference. I supposed I was holden for it all any way. I told Mr. Monroe that I considered myself equally bound whether the papers were signed 'Fish Bros. & Co., Agents,' or 'Fish Bros. & Co.' "

Upon the evidence of the appellant, above quoted, it is clear that the business carried on in the name of "Fish Bros. & Co." when the note in question was given, was in fact the business of the appellant, and, so far as the public was concerned, the signature of "Fish Bros. & Co." was in reality the signature of the appellant, and bound him to the same extent as though signed by himself, in the absence of evidence showing that the signature was appended to the note, check, or draft in question not in fact given in the conduct of said business. Under the evidence above quoted, and the further fact that it is not shown that the firm of Fish Bros. & Co. were doing any other business than the business of the appellant, we think the legal presumption is that the signature of Fish Bros. & Co. is the signature of the appellant, and made in his business, and, when such signature is appended to a promissory note, the purchaser thereof for value and before due would be entitled to recover thereon from the appellant, unless the knowledge of

the fact that it was not given in the business of the appellant was in some way brought home to the purchaser before or at the time he purchased the same.

This seems to have been the view of the case taken by the learned circuit judge, and that view of the case is supported by the following authorities: See *Bank of Rochester v. Monteath,* 43 Am. Dec. 681, 685, 1 Denio, 402, 405; *Palmer v. Stephens,* 1 Denio, 471; *Martin v. Johnson,* 8 Daly, 543; *Wright v. Hooker,* 10 N. Y. 51, 58; *Chandler v. Coe,* 54 N. H. 561, 564; *Crocker v. Colwell,* 46 N. Y. 212, 216, 217; *Palmer v. Elliot,* 1 Cliff. 65; *South Carolina Bank v. Case,* 8 Barn. & C. 427, 436; *Trueman v. Loder,* 11 Adol. & E. 589, 593; *Devendorf v. West Virginia Oil Co.* 17 W. Va. 135, 174; *Fuller v. Hooper,* 3 Gray, 334–341; Daniel, Neg. Inst. § 304. The question as to whether there was other evidence, including the note itself, in the case, sufficient to charge the agent of the plaintiff with notice that the note was not in fact made in the business of the defendant, was properly submitted to the jury, and we find no objection to that part of the charge, and the verdict of the jury is conclusive upon that question.

The exceptions taken to the introduction of certain evidence do not appear to us well taken. All the evidence so offered and received over the objections of the defendant tended to prove the extent to which the defendant had recognized the signature of his agents as his signature, and was proper evidence, tending to show that the signature of the note in question was the signature of the defendant, and authorized by him to be used in his behalf in making the note in question in this action.

The case seems to have been thoroughly tried by the learned counsel, and carefully considered and submitted to the jury, with instructions which fairly presented the real questions in issue, and the verdict and judgment must stand.

*By the Court.*— The judgment of the circuit court is affirmed.