ARNOLD and another, Respondents, vs. NATIONAL BANK OF WAUPACA, Appellant.

*November 15—December 12, 1905.*

*Real-estate brokers: "Option" on land: Contract to sell or of agency?*
*Commissions, when earned: Amount: Corporations: Authority*
*of officers or agents: Mistakes or misrepresentations: Banks.*

1. A so-called "option" upon lands, given by the owner to real-estate agents, for a limited time at a certain net price to the owner, is construed, under the evidence, to be merely a promise of exclusive agency during such time and an agreement to pay as commissions all sums which a purchaser found by the agents should be able and willing to pay in excess of the net price named.

2. Immediate performance of work by the agents in pursuance of such employment, brought at once to the knowledge of the owner, was an acceptance and gave mutuality to the contract.

3. By finding, within the time limited, a customer ready, able, and willing to pay for the lands a price in excess of the net price named, and by communicating that fact to the owner, the agents earned the agreed commission, whether the sale was consummated or not, and although the failure to make the sale was due to the owner's inability to make good title.

4. When a corporation has delegated to an officer or agent the power to conduct a certain business or transaction he becomes the corporation in conducting that business, and if he makes mistakes, is negligent, or commits fraud in so conducting it, the mistakes, negligence, or fraud are committed by the corporation. So *held*, where the cashier of a bank, having authority to employ agents to find purchasers for lands acquired by the bank in collection of its credits, by mistake contracted for payment of a commission to agents for the procuring of a purchaser for lands which the bank did not own.

5. The cashier in such case having actual authority to employ agents to find customers for the lands mentioned if they belonged to the bank, and having peculiar knowledge, not shared by the agents, as to whether the lands did so belong, his representation that the bank owned the lands was conclusive upon the bank as to his authority to make the contract of employment.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

In 1901 and 1902 the defendant, a national bank, had certain cut-over lands in Iron county, acquired in collection of indebtedness and held by it for sale. Of these lands there were 20 forties in townships 42 and 43 in range 2, and 29 forties in townships 41, 42, and 43 in range 3. In 1902 the plaintiffs, or rather plaintiff *Grieves,* who then conducted the same business, had made some efforts to sell the lands in range 2, without success, and at about the same time was supplied with a list of the lands in range 3, but apparently had given them no attention. In November, 1902, the defendant had in fact sold the 20 forties in range 2, but without the knowledge of the plaintiffs. In February, 1904, the plaintiffs, copartners as real-estate agents, inquired of the defendant whether it still held the lands in range 2 and would give the plaintiffs exclusive sale of same for four months, as they had a buyer in sight, but needed a definite time to close the deal. The defendant, writing by its cashier, replied that it had the lands, and, if there was reasonable prospect of sale, would be willing to give an option at the price of $3 net to it, and in response to another letter, explaining the necessity for plaintiffs' control over the sale of the lands for a definite time, on February 24, 1904, replied: "You may consider this in the way of an option for four months from this date, February 24, 1904, on our lands in Iron county, 42 and 43, 2 E., as per descriptions we sent you in a former letter." It is fully explained by the cashier that these letters were written under a misapprehension or oversight by him, and upon the supposition that the correspondence had reference to the land in range 3, which the bank still had. Plaintiffs commenced efforts to sell, communicated offers from different persons at a less price, but on the 20th of June, 1904, obtained a customer ready and willing to pay for the lands at $3,850 for the 814 acres comprised in the twenty government forties in range 2. On the last day of the option term, to wit, June 23, 1904, plaintiff *Grieves* went to Waupaca, informed the cashier of the bank

that he had effected sale, and asked for the execution of a deed, but then the confusion between the two ranges became apparent to the cashier, and he explained the mistake and stated that the bank did not own the lands in range 2, and that he had intended in all his correspondence reference only to the twenty-nine forties in range 3, and that defendant could not make deed.    Whereupon the plaintiffs procured the amount necessary to pay for the lands in range 2 at the rate of $3 per acre, and tendered it, with demand for a deed, which was refused.    This action was brought to recover plaintiffs' commissions as real-estate agents, the difference between $2,443.50, the price of the lands at $3 per acre, and $3,850, the price at which a customer had been found, but also alleging plaintiffs' demand of a deed to themselves and defendant's refusal, and that the fair market value of the lands was $3,850, and asserting damages in the sum of $1,406.50.    At the close of the trial, at which the foregoing facts appeared substantially without controversy, the court directed a verdict for the plaintiffs for the amount last named, in opposition to a motion by the defendant for a directed verdict in its behalf. From judgment entered upon that verdict the defendant appeals.

For the appellant there was a brief by E. L. & E. E. Browne, and oral argument by E. E. Browne.

For the respondents there was a brief by T. M. Holland and F. F. Wheeler, and oral argument by Mr. Holland.

DODGE, J.    Doubtless if the transaction between the defendant and the plaintiffs was a contract by the former to sell real estate to the latter, a breach arising out of absence of title in the defendant as to which it was honestly mistaken at the time of making the contract would result in liability only for special damages, probably not including the value of the bargain which plaintiffs thereby lost.    Arentsen v. Moreland, 122 Wis. 167, 99 N. W. 790.    But the complaint is founded upon

the theory of a contract of employment embodying a promise to pay an ascertainable amount for a specified service. It alleges the performance of that service and demands recovery of the promised compensation. The evidence of both parties is, to the effect that in dealing with a known real-estate agent the significance of authority to find a purchaser at a certain net price to the seller is understood to be an agreement to pay as commissions all sums in which the price which the buyer found is able and willing to pay exceeds the net price nominated. The evidence is also undisputed, being mainly documentary, that the plaintiffs and defendant met and dealt upon the basis of an authority or employment of the plaintiffs to find a customer, and that the so-called option meant no more than a promise of exclusive agency during its period. This construction of the transaction has the support of authorities generally. *Riemer v. Rice,* 88 Wis. 16, 59 N. W. 450; *Ellis v. Dunsworth,* 49 Ill. App. 187. The immediate performance of work by the plaintiffs in pursuance of such employment being at once brought to the knowledge of the defendant was undoubtedly an acceptance, and created mutuality to such contract. *Hooker v. Hyde,* 61 Wis. 204, 21 N. W. 52; *Superior C. L. Co. v. Bickford,* 93 Wis. 220, 67 N. W. 45; *Peterson v. Chase,* 115 Wis. 239, 91 N. W. 687; *W. G. Taylor Co. v. Bannerman,* 120 Wis. 189, 97 N. W. 918. The evidence is also undisputed that the plaintiffs did, within the four months period, find a customer ready, able, and willing to pay $3,850 for the land, and communicated that fact to the defendant. The authorities are uniform to the proposition that such act on the part of a real-estate agent, employed to find a customer at a net price to the seller, earns the agreed commission whether sale is consummated or not, and although failure to make sale is due to the owner's inability to make good title. *Riemer v. Rice, supra; Donohue v. Padden,* 93 Wis. 20, 66 N. W. 804; *Phelps v. Prusch,* 83 Cal. 626, 23 Pac. 1111; *Fitzpatrick v. Gilson,* 176 Mass. 477, 57 N. E.

1000; *Monk v. Parker,* 180 Mass. 246, 63 N. E. 793. For these reasons we are clear that, if the defendant bank acted in the various correspondence and transactions had between plaintiff and its cashier, the right to recover the commissions in the amount awarded by the judgment was established without controversy.

The remaining question, much debated, is whether the bank did so act. Appellant's discussion of the subject is somewhat confused by his persistency in viewing the transaction as a contract to sell real estate, whereas, as already declared, it must be considered as a mere contract of employment of an agent to find a customer. We find no conflict in the evidence that, among the duties and authority actually imposed upon the cashier of this bank, was that of taking customary and usual steps to find customers for such lands as these acquired by the bank in collection of its credits, speedy sale of which was demanded both by the interest and the legal duty of the corporation. Such aspect of his authority is testified to by officers and directors, and not contradicted except by absence of express by-law or resolution imposing such duty upon him. No other officer, however, had either duty or authority to perform such acts which were proper, nay essential, to the conduct of the corporation's ordinary business. The cashier was the chief executive officer, with no active superior except the board of directors, who acted, as do many such boards, only to direct upon doubtful questions specifically submitted to them. In all ordinary business the cashier was as completely the corporation as can well be conceived. It is urged, however, that, even if he had authority to contract for assistance in selling lands of the bank, he certainly had none to so contract with reference to lands in which the corporation had no interest. Let this be conceded, in a certain sense, but we must also concede that, in the same sense, the corporation itself was without power to deal in reference to such lands. Whatever a corporation can do at all, rightfully or wrongfully, it

can authorize an agent to do, for it can act only through some agency, whether that agency be a mere clerical employee or of any higher grade up to the board of directors, or even the stockholders' meeting. It is essential to the community that those dealing with business corporations should be able to hold them to the same civil responsibility for their acts as individuals would be held for similar ones. If, through negligence, fraud, or mistake, a corporation causes injury to another, it must respond as must an individual. Since it can be negligent, fraudulent, or mistaken only through some agent, and since intentional authorization to an agent to make mistake or state falsehood is hardly conceivable, the safety of business intercourse can only be protected by holding that, when a certain business or transaction is delegated to an agent, he becomes the corporation in conducting that business, and if he makes mistakes, is negligent, or commits fraud in so conducting it, the mistake, negligence, or fraud is committed by the corporation. For such reasons the rule is even more important with the agent of a corporation than of an individual that what he does, within the scope of the business intrusted to him, his principal does, within the eye of the law, however unauthorized or even forbidden. This on the principle that he who places it within the power of an agent to injure innocent third persons should be held to responsibility for abuse of that power rather than the innocent stranger. The rule needs no citation in its support beyond our own decisions, but a few from other jurisdictions illustrate its application. *Barteau v. West,* 23 Wis. 416, 421; *Wilson v. Noonan,* 27 Wis. 598; *Bass v. C. & N. W. R. Co.* 36 Wis. 450, 462; *Gano v. C. & N. W. R. Co.* 60 Wis. 12, 15, 17 N. W. 15; *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Gunther v. Ullrich,* 82 Wis. 222, 52 N. W. 88; *Burke v. M., L. S. & W. R. Co.* 83 Wis. 410, 53 N. W. 692; *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304; *Matteson v. Rice,* 116 Wis. 328, 92 N. W. 1109; *Sharp v. New York,* 40 Barb. 256; *Adams v. Cole,* 1

Daly, 147; *Farmers' & M. Bank v. B. & D. Bank,* 16 N. Y. 125; *N. Y. & N. H. R. Co. v. Schuyler,* 34 N. Y. 30, 68; *Purcell v. Jaycox,* 59 N. Y. 288; *Warren v. Dennett,* 39 N. Y. Supp. 830; *Edwards v. Thomas,* 66 Mo. 468; *Schram v. Strouse* (Tex. Civ. App.) 28 S. W. 262; *Griswold v. Gebbie,* 126 Pa. St. 353, 17 Atl. 673; *Wheeler & W. Mfg. Co. v. Boyce,* 36 Kan. 350, 13 Pac. 609; *Evansville & T. H. R. Co. v. McKee,* 99 Ind. 519; *Planters' R. M. Co. v. Merchants' Nat. Bank,* 78 Ga. 574, 3 S. E. 327; *Western M. Co. v. Toole,* 2 Ariz. 82, 11 Pac. 119.

It is entirely clear, as already stated, that, if an individual employs an agent to find a customer for certain lands, he becomes liable for the agreed compensation whether he owns them or not, although he may have acted on the mistaken supposition that he has title. He impliedly represents that he does own them. When a business is conducted by a corporation, safety and justice require that it be held to the same responsibility as an individual for the detail acts involved. It must be possible for it to mislead by its mistakes or misrepresentations such as might occur were an individual conducting similar business for himself. Hence, when an agent is clothed with the power of the corporation to conduct a certain business, he is also clothed with the power on behalf of the principal to make mistakes or representations as might an individual in the ordinary course of such a business. Necessarily an agent to hire services to be performed upon any property must, in the course of such duty, designate the thing to be worked upon. Such designation is in the course and scope of his agency, and a false or erroneous designation must be. Agency to represent the truth necessarily involves power to misstate, for the making of some statement is within the scope of the delegated business, and responsibility for the right or wrong use of that power must rest upon the principal. Illustrative cases are cited above. Authority to cause arrests of trespassers or debtors has been held to include selection and

designation of the persons. Hence mistake in arresting a non-trespasser, or one who has paid his debt, was held within the scope of the employment and to render principal liable to the injured party. Still more obviously would result liability to an attorney employed by the agent to institute the arrest proceedings. Many other illustrations from decided cases might be indicated, but are not necessary to induce us to the conclusion that the cashier, being authorized to employ a real-estate agent, was of course authorized to designate the lands to be offered for sale, and a mistake in such designation was within the course and scope of the business. Hence his acts in that respect bound the defendant.

Another general rule in the law of agency supports the same conclusion.

"Where the authority of the agent depends on some fact outside the terms of his power, and which, from its nature, rests particularly within his knowledge, the principal is bound by the representation of the agent, although false, as to the existence of such fact."

The exercise of the authority itself is, unambiguously, such a representation. *North River Bank v. Aymar,* 3 Hill, 262; *Griswold v. Haven,* 25 N. Y. 595; *N. Y. & N. H. R. Co. v. Schuyler,* 34 N. Y. 30, 68; *Conroe v. Case,* 79 Wis. 338, 48 N. W. 480. The same idea as to acts of corporate officers is phrased by COLE, C. J.:

"If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them." *Gano v. C. & N. W. R. Co.* 60 Wis. 12, 15, 17 N. W. 15; *S. C.* 66 Wis. 1, 27 N. W. 628, 838.

The cashier having actual authority to employ plaintiffs to find customers for these lands if they belonged to the corporation, and having peculiar knowledge whether they did, and plaintiffs being ignorant, the cashier's representation of that fact concluded the defendant as to its agent's authority to make the contract.

Appellant urges that the question of plaintiffs' good faith in relying on defendant's ownership of the lands should have been submitted to the jury. We are unable to find any evidence sufficient to raise an issue of fact against the direct evidence of one of the plaintiffs that he had no knowledge to the contrary and therefore relied on the defendant's express statement that it did still own the lands described in the complaint.

We cannot avoid the conclusion that plaintiffs' cause of action, as stated in the complaint, was established upon undisputed facts, and that the trial court rightly directed the verdict.

*By the Court.*—Judgment affirmed.